# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
February 1, 2012

No. 11-30274

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

DANIEL JAMES BROUSSARD,

Defendant - Appellant

Appeal from the United States District Court
for the Western District of Louisiana

Before KING, JOLLY, and WIENER, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

Daniel James Broussard pleaded guilty to two counts of using a facility of interstate commerce to attempt to coerce a minor to engage in criminal sexual activity, in violation of 18 U.S.C. § 2422(b). Broussard engaged in sexually explicit conversations with minors over the internet and by text messaging on a cellphone in which he discussed meeting with the minors for sex. The district court, calling Broussard "sick in the head," was not inclined to be lenient. It sentenced Broussard to imprisonment for 240 months (20 years) per count to run consecutively, for a total term of imprisonment of 480 months (40 years). The sentence is a significant upward variance from Broussard's calculated guideline

No. 11-30274

range of 120 months (10 years) of incarceration. Broussard is not happy with his plea of guilty nor his sentence. On appeal, he challenges the sufficiency of the factual basis of his plea, contending that his actions towards the minor victims did not constitute a substantial step toward persuading the minors to engage in criminal sexual activity because he never made plans to travel to meet them. Broussard also objects to the procedural and substantive reasonableness of his sentence, including the district court's consideration of the Government's late-submitted sentencing memorandum. We hold that Broussard fails to demonstrate that the district court committed plain error in finding a sufficient factual basis for his plea. Although we uphold his guilty plea, we vacate Broussard's sentence because the district court improperly relied on Broussard's rehabilitative needs in lengthening his sentence. We remand for resentencing.

I.

According to the affidavit filed with the criminal complaint, on June 11, 2010, Lafayette Police Department ("LPD") Officers Thibodeaux and Royer were dispatched to an address in Lafayette, Louisiana regarding a complaint of indecent behavior with a minor female. Upon arrival, the officers met with the complainant, the mother of the minor female victim later identified in court documents as "KP." KP's mother informed the officers that KP had been communicating with a man, "Robbie Wade," over the internet and cellphone. Broussard would later stipulate to using the name "Robbie Wade" to communicate with KP and the other minor victims.

KP's mother explained that the contact had been friendly at first, but then turned sexual, with KP informing her mother that Broussard had convinced her to show various parts of her body and masturbate in front of a webcam.[1] Broussard would later stipulate that he had threatened to show naked pictures

---

[1] A webcam is a video camera that feeds real-time images over the internet.

2

No. 11-30274

of KP to her friends if she did not masturbate for him over the webcam. KP's mother also told the officers that Broussard had sent a picture of his penis to KP and told her that he wanted them to meet to have sex, which he wanted to videotape. The officers, with her mother's consent, took KP's laptop computer, camera, and cellphone for further examination. A forensic review of the laptop recovered one image of a male penis, which KP later identified as the photo image sent to her by Broussard. On June 23, 2010, Detective Bajat of the LPD interviewed KP, and she confirmed the information provided by her mother to Officers Thibodeaux and Royer.

Investigators tracked the cellphone number provided by KP as belonging to Robbie Wade to a "Danie Broussard." They learned that Broussard was a twenty-one-year-old student at the University of Louisiana-Lafayette, scheduled to graduate in 2013, although not currently enrolled. On June 25, 2010, officers executed a state search warrant at Broussard's apartment in Lafayette. He was not there; however, his roommates informed the officers that Broussard had been living in Tulsa, Oklahoma for the past few months with his aunt and uncle while he recovered from a severe leg fracture. During the search, officers recovered a fifty-nine page journal locked in a briefcase that later would be attributed to Broussard.

LPD officers contacted the Tulsa Police Department, which obtained a state search warrant based on the LPD's information for the aunt and uncle's residence in Tulsa. Officers executed it, arrested Broussard, and seized his laptop computer. Broussard waived his *Miranda* rights and agreed to answer questions. In a written questionnaire, he acknowledged engaging in conversations or chats, sexual in nature, with individuals he knew to be under the age of eighteen. He further admitted to using his Skype account to solicit or send pornographic or lewd text messages to individuals under the age of eighteen. He estimated that the last time he had engaged in sexually explicit

3

webcam activity with someone under the age of eighteen had been a week and a half prior to his arrest. That activity had included "watching a girl on the webcam, having her disrobe." A few days before that, he told investigators that he had watched a thirteen- or fourteen-year-old girl masturbate. When asked by investigators how many sexual experiences he had with minors over the webcam, Broussard gave a "ballpark figure" of about a "hundred different individual instances," although he estimated that those experiences represented only approximately thirty-five minors between thirteen and eighteen years old.

On July 13, 2010, Broussard was indicted on one count of production of child pornography and one count of using a facility of interstate commerce to attempt to coerce a minor to engage in criminal sexual acts.[2] He pleaded not guilty to the charges at his arraignment. A subsequent forensic download of Broussard's cellphone information by federal agents, however, revealed that he also had been communicating with at least three other minor females in a sexually explicit manner. Interviews conducted with these minor females revealed that each female had sent text messages to Broussard and also received text messages from him in return. Each victim acknowledged that Broussard had talked to them about meeting for sex, and that Broussard was aware that they were minors during the course of their conversations. All three victims reported meeting Broussard on Facebook, after which they provided him with their respective cellphone numbers.

On August 10, 2010, a superseding indictment was filed against Broussard. Count One charged him with production of child pornography, in violation of 18 U.S.C. § 2251(a). Counts Two through Five charged him with using a facility of interstate commerce to attempt to coerce a minor to engage in

---

[2] On July 1, 2010, a criminal complaint was filed against Broussard charging him with production of child pornography, using a facility of interstate commerce to attempt to coerce a minor to engage in criminal sexual acts, and possession of child pornography.

No. 11-30274

criminal sexual acts, in violation of 18 U.S.C. § 2422(b).[3]  Counts One and Two referenced Broussard's conduct toward KP.  Counts Three through Five referenced victims "TL," "KH," and "LC," respectively, who were the three other minor female victims discovered during the forensic review of Broussard's cellphone.

Broussard and the Government negotiated and entered into a plea agreement.  On September 27, 2010, Broussard pleaded guilty to Counts Three and Four of the superseding indictment, which referenced his sexually explicit communications with victims TL and KH, respectively.  In the plea agreement and during the plea hearing, Broussard stipulated that, in June 2010, he began communicating with KP over the internet and eventually convinced her to masturbate over the webcam.  Broussard further stipulated that, during June, he began communicating via text message on a cellphone with minor females TL, age thirteen; KH, age thirteen; and LC, age fourteen.  Broussard stipulated that during his conversations with TL, KH, and LC, he discussed meeting with each of them to engage in sexual activities.  When asked during the plea colloquy if he did everything the Government said he did, Broussard answered yes.  The district court accepted his plea.  Under the plea agreement's terms, the remaining counts were dismissed after Broussard's sentencing.

In preparing Broussard's pre-sentence report ("PSR"), the probation officer calculated a combined adjusted offense level of 29 and assigned a criminal history category I, yielding a guidelines range of imprisonment of 87 to 108 months. The mandatory minimum sentence under 18 U.S.C. § 2422(b), however, is 120 months (10 years), and the maximum is life imprisonment.  Because the

---

[3] Louisiana law prohibits the use of a computer or "electronic textual communication . . . for the purpose of or with the intent to persuade, induce, entice, or coerce [a person under the age of seventeen] to engage or participate in sexual conduct . . . or with the intent to engage or participate in sexual conduct in the presence of the person."  LA. REV. STAT. ANN. § 14:81.3(A)(1).

statutory mandatory minimum sentence is greater than the guideline range maximum, the statutory minimum of 120 months became Broussard's guideline sentence. *See* U.S.S.G. § 5G1.1(b). The PSR noted that there were "no known or mitigating or aggravating circumstances" that would warrant a departure from the guideline sentence, or any "factors that would support a sentence outside of the guideline system." Neither party objected to the PSR.

Three calendar days and one business day before Broussard's scheduled sentencing, the Government submitted its sentencing memorandum in which it argued that an upward variance from the guidelines range of 120 months was warranted. More specifically, the Government advocated that a sentence of 360 months (30 years) was appropriate considering the nature of Broussard's criminal activity and the need for him to obtain correctional treatment. The government attached as evidence, and focused on, Broussard's journal, found in his Lafayette apartment, in which he described himself as a "pedophile," and wrote detailed, apparently fictional stories about engaging in incest with family members and in sexual activities with minor females. Based on the similarities between Broussard's discussions with the female victims about engaging in sexual activities and the writings in the journal[4] about engaging in sex with young girls, regardless of their accuracy, the Government contended that it is "clear [ ] that [Broussard] is excited by engaging in sex acts with young children."

Turning to the 18 U.S.C. § 3553(a) factors, the Government next argued that Broussard's conduct was more egregious than the "typical" offender prosecuted under 18 U.S.C. § 2422(b); "typical" meaning a defendant who engages in explicit chats with an undercover officer, instead of an actual minor, or with one victim, instead of several victims. Because Broussard attempted to

---

[4] No one disputes that the stories written in the journal did not actually take place.

cause several minor females to engage in criminal sexual activities, sent sexually explicit images of himself to minors, and sought sexually explicit images of minors in return, the Government maintained that he deserved a sentence above the mandatory minimum. Furthermore, citing a statement of a psychologist who treats sex offenders, the Government contended that 360 months of imprisonment was justified by the need to deter other offenders seeking to exploit minors in a manner similar to Broussard. Additionally, the sentence would place children out of Broussard's grasp for quite awhile. Finally, arguing that Broussard "clearly needs long term help," the Government urged the court to incarcerate Broussard in a facility focused on the treatment of sex offenders so that "he can get long term therapy and counseling."

Broussard's attorney filed a reply the day before the hearing, arguing, *inter alia*, that the district court should disregard the Government's memorandum because of its untimeliness. He also objected to the memorandum insofar as it referred to a statement of a psychologist who had never examined him or rendered an opinion in his case.

Broussard's sentencing occurred as scheduled. Indeed, neither party voiced any objection when asked by the court if a continuance was needed because of the Government's late submission. The court agreed that the Government's memorandum had been submitted "very late," but declined Broussard's suggestion to disregard it entirely; instead, the court announced it would consider both the Government's memorandum and Broussard's reply. The court then heard testimony from Broussard's uncle and from a case agent.

Before imposing a sentence, the district court had Broussard confirm the information to which he had stipulated in the plea agreement and during the plea colloquy. Broussard again affirmed that he had sexually explicit conversations or chats with approximately thirty-five different minors. Broussard also confirmed he had told some of the minor females that he wanted

to meet to have sex with them. Broussard stated, however, that he had never had sex with a minor; that it was "all fantasy." The district court then asked, "But you were trying to set up meetings with some of these girls that were under 18 years of age?" Broussard responded that he had "mentioned that with them, but it was just talk."

After argument, the district court imposed Broussard's sentence. Because Broussard has challenged the procedural and substantive reasonableness of the district court's sentence, we produce the entirety of the sentencing colloquy below:

> The advisory applications of the guidelines are as follows: The defendant's offense level is 29. The defendant's criminal history is Category I. The advisory guideline range is 87 to 108 months of imprisonment per count with a statutory provision of 10 years to life. So no less than ten to life per count. Probation is not applicable. Five years to life of supervised release per count. A fine of between $15,000 and $150,000. Restitution is not applicable. And a special assessment of $100 per count pursuant to 18 U.S.C. [§] 3013 is required.

> The Court has taken into consideration all of the factors as previously stated in 18 U.S.C. [§] 3553.

> Number one, the nature and circumstances of the offense and the history and characteristics of the defendant. There has only been one other defendant I've had before me that I considered more dangerous than this individual, and at the time the mandatory maximum sentence the Court could give was 10 years. That was a guy by the name of Byrd that was prosecuted here. I thought it was reprehensible that we had a guideline range with the maximum sentence that could be imposed on that individual was only 10 years. Then I couldn't understand why he was not prosecuted by the state for true child molestation, but that was out of my control and out of the control of the U.S. Attorney's office and the individual prosecutor who handled that thing who happens to be Mr. Walker.

> Two, the need for the sentence imposed, (A), to reflect the seriousness of the offense. They don't get much more serious.

No. 11-30274

To promote respect for the law and to provide just punishment for the offense. When we talk about just punishment and we look at the other sentences that this Court has ordered over the years, I have in fact recently imposed a sentence of about 14 and a half years on an individual who in my opinion was less culpable than this individual.

(B), to afford adequate deterrence to criminal conduct which means incarceration which is going to happen here.

(C), to protect the public from further crimes of the defendant. Thank God that – whether this was a fantasy or carry-out, you know, history is full of individuals who start off with fantasies and end up with the reality of carrying out those fantasies. This young man is sick in the head. He needs help badly. He knows the difference between right and wrong, there is no doubt about that, but he doesn't seem to care when it comes to fulfilling his fantasy. And the fantasy started off with the probability that all of these things that he said in those writings were fantasy, but he continued with the fantasy in reality. That's a scary thing. This is a scary individual when it comes to children.

And this gentleman is in – and I use that term very loosely. This individual – I shouldn't say gentleman – is in need of education pertaining to his problems and he needs medical care and treatment.

The kind of sentences available is a minimum ten years, a maximum of life. That's the kind of sentence that is available.

Number six is what [defendant's counsel] is stressing. The need to avoid unwarranted sentenc[ing] disparities among defendants with similar records who have been found guilty of similar conduct. It's a compelling part of the sentencing process, but not as compelling as the need to incarcerate this individual for the treatment that he needs.

The Court will impose the following sentence without hesitation. Hopefully others will read and hear about this type of sentence and not continue to prey on children in this or any other community – not only in the United States, but everywhere.

9

No. 11-30274

The Court will order the following sentence: 240 months of imprisonment per count to run consecutively. Of course there is no probation. The Court will order that the defendant, once his released, will be on life supervised release.

Broussard did not object to his sentence, on either procedural or substantive grounds, after the court finished the colloquy. Broussard did, however, file a motion for reconsideration on March 10, 2011, in which he moved for the sentence to be vacated on the ground that the district court did not give notice that it was going to depart upwardly from the calculated guideline range in accordance with Federal Rule of Criminal Procedure 32(h). Broussard asserted that this failure, coupled with the late submission of the journal, which he maintained the district court accepted as persuasive evidence for an upward departure, prejudiced him. The district court denied the motion without written reason on March 17. Broussard timely appealed the next day.

On appeal, Broussard challenges the factual basis supporting his convictions for using a facility of interstate commerce to attempt to coerce a minor to engage in criminal sexual activity. He also argues that his sentence should be vacated because it was procedurally and substantively unreasonable. Finally, he contends that the district court's consideration of the government's sentencing memorandum violated his due process. We address each in turn.

II.

A.

Broussard did not object to the sufficiency of the factual basis of his plea before the district court; instead, for the first time on appeal, he presents the question whether the undisputed factual basis is sufficient as a matter of law to sustain his plea. *See United States v. Angeles-Mascote*, 206 F.3d 529, 530 (5th Cir. 2000). We review a Federal Rule of Criminal Procedure 11 challenge raised for the first time on appeal for plain error. *United States v. Vonn*, 535 U.S. 55, 63 (2002). To meet this burden, the defendant must demonstrate that "the

10

district court committed an error that was clear or obvious and that affected [his] substantial rights," and that "'the error has a serious effect on the fairness, integrity, or public reputation of judicial proceedings.'" *United States v. Thompson*, 454 F.3d 459, 464 (5th Cir. 2006) (quoting *United States v. Alvarado-Santilano*, 434 F.3d 794, 795 (5th Cir. 2005)). To show that the error affected his substantial rights, Broussard must demonstrate "a reasonable probability that, but for the error, he would not have entered the plea." *United States v. Dominguez Benitez*, 542 U.S. 74, 83 (2004).

B.

First, we must determine if the district court committed a clear or obvious error in accepting Broussard's plea based on the factual record. Before accepting a defendant's plea of guilty and entering judgment thereon, a trial court is required to determine that there is a factual basis for the plea. FED. R. CRIM. P. 11(b)(3). The intention of Rule 11(b)(3) is to protect a defendant who voluntarily pleads guilty with an understanding of the nature of the charge but "without realizing that his conduct does not actually fall within the definition of the crime charged." *Angeles-Mascote*, 206 F.3d at 530 (internal quotation marks omitted).

The factual basis for a guilty plea must be in the record and "sufficiently specific to allow the court to determine whether the defendant's conduct is within the 'ambit of the statute's prohibitions.'" *Id.* (quoting *United States v. Gobert*, 139 F.3d 436, 439 (5th Cir. 1998)). Thus, the district court must compare: (1) the conduct to which the defendant admits; and (2) the elements of the offense charged in the indictment. *United States v. Marek*, 238 F.3d 310, 315 (5th Cir. 2001). Implicit then, in the district court's acceptance of Broussard's guilty plea, was its determination that Broussard's admitted conduct satisfied every element of 18 U.S.C. § 2422(b). *Id.* "In assessing factual sufficiency under the plain error standard, we may look beyond those facts admitted by the defendant during the plea colloquy and scan the entire record for facts

No. 11-30274

supporting his conviction," and draw any fair inferences from the evidence. *United States v. Trejo*, 610 F.3d 308, 313, 317 (5th Cir. 2010).

Broussard pleaded guilty to two counts of violating 18 U.S.C. § 2422(b) with respect to his conduct toward TL and KH. Under this section, a person may not, using the mail or any facility or means of interstate commerce, "knowingly persuade[ ], induce[ ], entice[ ], or coerce[ ] any individual who has not attained the age of 18 years, to engage in . . . any sexual activity for which any person can be charged with a criminal offense, or attempt[ ] to do so." 18 U.S.C. § 2422(b). The criminal sexual offense implicated by Broussard's conduct is defined by § 14:81.3 of the Louisiana Revised Statutes, which prohibits the use of a computer or "electronic textual communication . . . for the purpose of or with the intent to persuade, induce, entice, or coerce [a person under the age of seventeen] to engage or participate in sexual conduct . . . or with the intent to engage or participate in sexual conduct in the presence of the person." LA. REV. STAT. ANN. § 14:81.3. Broussard stipulated to violating § 14:81.3(A)(1).

The parties agree that Broussard pleaded guilty to an *attempted* violation of 18 U.S.C. § 2422(b). To prove attempt, the Government must establish beyond a reasonable doubt that the defendant "(1) acted with the culpability required to commit the underlying substantive offense, and (2) took a substantial step toward its commission." *United States v. Barlow*, 568 F.3d 215, 219 (5th Cir. 2009). Thus, the Government was required to demonstrate that Broussard intended to persuade, induce, entice, or coerce a person whom he believed to be a minor to engage in criminal sexual conduct and "took a substantial step toward that persuasion or enticement."[5] *Id.* A "substantial step" is defined as "conduct which strongly corroborates the firmness of defendant's criminal attempt."

---

[5] Broussard does not challenge that the other elements of the offense are established, *i.e.*, that the victims were under the age of eighteen, and that he used a means of interstate commerce in violating the statute.

12

No. 11-30274

*United States v. Farner*, 251 F.3d 510, 513 (5th Cir. 2001). "[M]ere preparation" does not satisfy this standard. *Barlow*, 568 F.3d at 210 (quoting *United States v. Mandujano*, 499 F.2d 370, 373 (5th Cir. 1974)).

Broussard argues that there is no factual basis for an "attempt" theory to support his convictions because the Government failed to prove that he took any substantial step toward actual sexual contact by arranging a meeting with the alleged victims. Broussard relies on our decision in *United States v. Farner*, 251 F.3d 510 (5th Cir. 2001), to support his argument. In *Farner*, we affirmed the § 2422(b) conviction of the defendant, who, over a four-month period, engaged in sexually explicit conversations via instant messaging, e-mail, and the telephone with what he believed to be a fourteen-year-old girl (in reality, an undercover FBI agent), and attempted to persuade her to have sexual relations with him. *Id.* at 511. Farner and the "girl" eventually made arrangements to meet in Houston, Texas to engage in sexual activity, and Farner drove from his home in Dallas, Texas to meet her at a local Houston restaurant. *Id.* He was arrested at their meeting place. *Id.* In affirming his conviction under § 2422(b), we concluded that the district court correctly found, beyond a reasonable doubt, that Farner intended to engage in sexual acts with a fourteen-year-old girl, and that he took substantial steps toward committing the offense. *Id.* at 513.

Broussard contrasts *Farner* with the circumstances presented by his case. He argues that, unlike *Farner*, the conversations between himself and victims TL and KH were "all fantasy" and "just talk." More importantly, he points out that, because he was living in Tulsa, Oklahoma and TL and KH were living in Lafayette, Louisiana during the time of the offense conduct, and there was no indication that he took a substantial step toward arranging a meeting with either girl, the factual basis was insufficient to support his convictions.

Although Broussard casts *Farner* in a light that would appear to validate his argument, we never explicitly or implicitly ruled in *Farner* that a substantial

13

No. 11-30274

step toward sexual contact was necessary to sustain a § 2422(b) conviction. Instead, as we specifically stated in *United States v. Barlow*, 568 F.3d 215 (5th Cir. 2009), a conviction under § 2422(b) "does not require that the sexual contact occur, but that the defendant sought to persuade the minor to engage in that contact." *Id.* at 219 n.10 (citing *United States v. Bailey*, 228 F.3d 637, 639 (6th Cir. 2000) (§ 2422(b) criminalizes "persuasion and the attempt to persuade, not the performance of the sexual acts themselves")). Numerous other courts of appeals also have come to the same conclusion.[6]

Nor have we explicitly or implicitly ruled that a substantial step toward persuading a minor to engage in illegal sexual activity requires travel or preparations in advance of travel. In *Barlow*, the defendant was convicted of attempting to persuade a person he believed to be a minor to engage in sexual activity in violation of § 2422(b). *Id.* at 217. The defendant had carried on correspondence via instant messaging and e-mail with what he believed to be a fourteen-year-old girl (in reality, an adult female who freelanced for law enforcement to attract potential sex offenders), which had included engaging in explicit conversations, sending explicit photos of himself, and requesting explicit photos of the girl in return. *Id.* at 217-18. Eventually, they agreed to meet at a state park in Mississippi, and during the visit the defendant said he would show the girl the "inside of his tent." *Id.* at 218. The defendant arrived at the state park at the designated time, but was spooked by an agent and left, although he was apprehended and arrested. *Id.* The defendant argued on appeal that there was insufficient evidence to demonstrate that he took a

---

[6] *See, e.g., United States v. Lee*, 603 F.3d 904, 914 (11th Cir. 2010) ("With regard to conduct, the government must prove that the defendant took a substantial step toward causing assent, not toward causing actual sexual contact."); *United States v. Pierson*, 544 F.3d 933, 939 (8th Cir. 2008) ("The government need not prove that the defendant intended to participate in a physical sexual act. It is sufficient for the government to prove that the defendant intended to persuade or entice a minor to engage in illegal sexual activity."); *United States v. Dwinnells*, 508 F.3d 63, 70 (1st Cir. 2007) (rejecting language in *Farner* as dicta).

14

substantial step toward persuading a minor to engage in sexual activity because he left the park before the girl arrived. *Id.* We disagreed, citing the nearly eleven months spent before the meeting during which the defendant pursued the girl. *Id.* at 219. The defendant's pursuit had included attempting to persuade her to send explicit photos of herself, promising her a modeling career, making her feel good, and suggesting meetings and phone calls. *Id.* Finally, we noted that the defendant had driven to the state park and waited for the girl's arrival, and his early departure did not undo the substantial steps he already had taken to that point. *Id.* at 219-20. Even though Barlow traveled to meet the girl and that "substantial step" is absent here, *Barlow* also illustrates that a substantial step toward persuading the minor to assent to sexual contact can occur solely through communications with the minor.

Thus, our inquiry focuses on whether the record supports the allegation that Broussard took a substantial step toward persuading TL and KH to engage in illegal sexual activity. *Id.* at 219 n.10. The Government acknowledges that Broussard never met with any of the victims, but argues that he took a substantial step when he crossed the line from mere talk to discussing his desire to meet with TL and KH to have sex. The Government notes that after Broussard met each victim on Facebook, he would soon obtain their cellphone numbers, and at some point thereafter, he would discuss meeting them for the purpose of engaging in criminal sexual activities. Although Broussard could not have met the minor victims for sex at the time of the offense conduct, the Government asserts that the record supports a finding that the purpose of Broussard's communications with TL and KH was to set the stage for a future meeting when he returned to Lafayette, which he was scheduled to do within a few days but for his intervening arrest. The Government urges us, therefore, to infer Broussard's intent to arrange a future rendezvous with the two victims, and his conversations discussing a future meeting to engage in sex thus

15

amounted to a substantial step toward enticing the minor victims to engage in criminal sexual activity.[7]

A review of the facts in this case provides very few details about Broussard's conduct toward TL and KH. The superseding indictment, which "can be used as the sole source of the factual basis for a guilty plea," simply tracks the language of 18 U.S.C. § 2422(b) and thus is not "sufficiently specific." *United States v. Garcia-Paulin*, 627 F.3d 127, 133-34 (5th Cir. 2010) (internal quotation marks omitted). The factual basis accompanying the plea agreement, moreover, states only that Broussard "communicat[ed] using text messaging on a cellular telephone to [ ] 13 year old minor[s] from the Lafayette, Louisiana area, initials [TL and KH]" and that "[d]uring those conversations the defendant discussed meeting with the minor female[s] to engage in sexual activities." During his plea colloquy, Broussard affirmed that the factual basis was correct, and that he had conversations with KH and TL during which he discussed meeting to engage in sexual activities, but there were no additional facts concerning TL and KH uncovered during the plea hearing.

Nor does the PSR illumine Broussard's interactions with KH and TL, stating only:

> A subsequent forensic download of Broussard's cell phone information by federal agents revealed that Broussard had been communicating with at least three (3) additional minor females. Interviews conducted with these minor females[ ] revealed that each female had sent text messages to Broussard and also received text messages from Broussard. Each minor female victim acknowledged that Broussard had talked to them about meeting for sex, and each

---

[7] The Government puts forth as evidence of Broussard's substantial steps toward criminal sexual activity his conduct with KP, the victim identified in Counts One and Two of the superseding indictment. Those counts, however, were dismissed under the terms of the plea agreement, and Broussard never admitted to engaging in similar conduct with TL and KH. Notwithstanding the Government's protestations, we will not consider Broussard's conduct with KP to determine if there is a sufficient factual basis to sustain his conviction for violating § 2422(b) with respect to his conduct toward TL and KH.

advised that Broussard was aware that they were minors during the course of their conversations. All three minor females reported meeting Broussard on Face[b]ook and eventually providing Broussard with their respective phone numbers.

At the sentencing, furthermore, Broussard confirmed that he "had mentioned" setting up meetings with some girls under age eighteen to have sex with them, but qualified his answer by stating that it was "just talk" and "all fantasy." In any event, TL and KH are never mentioned by name during the questions and answers between the court and Broussard during the sentencing hearing.

We are thus left with the following facts about Broussard's conduct toward KH and TL: He became friends with each of them on Facebook; he then obtained their cellphone numbers; he then began conversing with each of them via text message; and during those conversations, Broussard discussed meeting with each minor female to engage in sexual activities. No one disputes that Broussard never traveled or made definitive plans to travel to meet TL and KH, but as noted above, we have never ruled that physical proximity or travel or plans to travel is necessary to constitute a substantial step under § 2422(b). *See Barlow*, 568 F.3d at 219-20; *see also, e.g.*, *United States v. Goetzke*, 494 F.3d 1231, 1236 (9th Cir. 2007) (attempting to persuade, induce, entice, or coerce a minor to engage in criminal sexual activity is "an attempt to achieve the mental act of assent, for which physical proximity can be probative but is not required"); *United States v. Yost*, 479 F.3d 815, 820 (11th Cir. 2007) ("[T]ravel is not necessary to sustain such a conviction."); *United States v. Thomas*, 410 F.3d 1235, 1246 (10th Cir. 2005) ("Thomas crossed the line from 'harmless banter' to inducement the moment he began making arrangements to meet [the victim], notwithstanding the lack of evidence that he traveled to the supposed meeting place."). *But see United States v. Gladish*, 536 F.3d 646, 649 (7th Cir. 2008). Instead, the prohibited act of persuasion can occur over a distance, as the statute expressly contemplates, and logic would appear to dictate that having

discussions with TL and KH about meeting to have sex is a substantial step toward persuading them to have sex. *See, e.g.*, *United States v. Rothenberg*, 610 F.3d 621, 627 (11th Cir. 2010) ("[T]he very nature of the underlying offense–persuading, inducing or enticing engagement in unlawful sexual activity–necessarily contemplates oral or written communications as the principal if not the exclusive means of committing the offense."). The explicit details of their conversations, although illustrative of the attempted persuasion, are not necessary to draw that conclusion. But, as we have never addressed whether obtaining a phone number and having conversations with a minor about meeting for illicit sexual activity constitutes a substantial step toward persuading a minor to engage in illicit sexual activity under § 2422(b)–nor has any intervening decision clarified the issue–any error on the district court's part in accepting Broussard's plea on the factual basis established by the evidence could not be plain. Considering the caselaw, and the arguments of Broussard and the Government, leads to one conclusion: any error by the district court is subject to reasonable dispute. By definition, that is not plain error. *Puckett v. United States*, 129 S. Ct. 1423, 1429 (2009).

Broussard also argues that an alleged violation of § 14:81.3 of the Louisiana Revised Statutes does not meet the definition of "sexual activity" under 18 U.S.C. § 2422(b), citing the Seventh Circuit's decision in *United States v. Taylor*, 640 F.3d 255 (7th Cir. 2011). In *Taylor*, the Seventh Circuit, applying the rule of lenity, held that "sexual activity" includes only actual touching and that persuading a minor to masturbate on a webcam therefore did not violate the statute. *Id.* at 259-60. Broussard acknowledges, however, that the Government dismissed the count alleging that he persuaded one of his victims to masturbate on webcam and thus *Taylor* does not bear heavily on whether there was a sufficient factual basis for his plea to Counts Three and Four. In any event, any error the district court may have committed was not plain as we have never

No. 11-30274

addressed whether an alleged violation of § 14:81.3 of the Louisiana Revised Statutes constituted "sexual activity for which any person can be charged with a criminal offense" under § 2422(b). *Puckett*, 129 S. Ct. at 1429.

In sum, the district court did not commit plain error in accepting Broussard's guilty plea to Counts Three and Four of the superseding indictment for attempting to persuade a minor to engage in criminal sexual activity in violation of 18 U.S.C. § 2422(b) based on the facts in the record concerning his conduct toward TL and KH. Accordingly, we affirm his convictions, based on his plea of guilty, on both counts.

III.

A.

Broussard also contests the procedural and substantive reasonableness of his sentence. In reviewing a challenge to a sentence, we first ensure that the district court committed no significant procedural error, and once satisfied in this accord, we analyze the sentence for substantive reasonableness, applying an abuse of discretion standard. *Gall v. United States*, 552 U.S. 38, 51 (2007); *United States v. Cisneros-Gutierrez*, 517 F.3d 751, 764 (5th Cir. 2008). When, as here, the district court imposes a non-guidelines sentence, we "may consider the extent of the deviation [in our review], but must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance." *Gall*, 552 U.S. at 51. In this regard, "[a] non-[g]uideline sentence unreasonably fails to reflect the statutory sentencing factors where it (1) does not account for a factor that should have received significant weight, (2) gives significant weight to an irrelevant or improper factor, or (3) represents a clear error of judgment in balancing the sentencing factors." *United States v. Smith*, 440 F.3d 704, 708 (5th Cir. 2006).

19

No. 11-30274

## B.

First, we observe that the district court correctly calculated Broussard's guidelines range. It then began its reasoning by stating that it had considered all of the § 3553(a) factors before proceeding to analyze particular § 3553(a) factors to explain its chosen sentence. In citing the nature and circumstances of the offense, and the history and characteristics of the defendant, 18 U.S.C. § 3553(a)(1), the court explained that it had only once sentenced a defendant more dangerous to children than Broussard. Next, the court noted that Broussard's offenses "don't get much more serious," and that, when considering the need for the sentence to provide just punishment for the offense, it had recently punished someone less culpable than Broussard, in its view, to fourteen-and-a-half years of incarceration. *Id.* § 3553(a)(2)(A). Incarceration was warranted moreover, according to the district court, in order to deter adequately those who would engage in similar criminal conduct with minors. *Id.* § 3553(a)(2)(B).

After this point, the district court's reasoning strayed from the permissible toward the impermissible. With respect to the need to protect the public from future crimes of the defendant, *id.* § 3553(a)(2)(C), the court stated that Broussard is a "scary individual when it comes to children." The court recalled that history is full of individuals who start with mere fantasies that they later sought to fulfill, and in the court's view, Broussard disregards what he knows to be the difference between right and wrong in order to fulfill the fantasies he detailed in the fifty-nine page journal. The court stated that Broussard "is sick in the head," "needs help badly," and "is in need of education pertaining to his problems and he needs medical care and treatment." Then, the district court noted that, although the need to avoid unwarranted sentencing disparities among similarly-situated defendants is a "compelling part of the sentencing process," it is "not as compelling as the need to incarcerate this individual for the treatment that he needs." The court then imposed a sentence of 240 months per

No. 11-30274

count to run consecutively, for a total of 40 years of imprisonment, to be followed by lifetime supervised release.

Although the shadows of the Supreme Court's decision in *Tapia v. United States*, 131 S. Ct. 2382, 2391 (2011), were cast on the sentence after the district court entered judgment, the district court's reliance on Broussard's need for treatment in determining the length of his sentence became impermissible. In *Tapia*, the Supreme Court held that, under 18 U.S.C. § 3582(a),[8] sentencing courts are prohibited "from imposing or lengthening a prison term to promote an offender's rehabilitation." *Id.* There can be no dispute[9] that the district court explicitly considered, in both selecting and imposing a term of incarceration, the need to incarcerate Broussard for treatment to address his problems. We recognize that "[a] court commits no error by discussing the opportunities for rehabilitation within prison or the benefits of specific treatment or training programs." *Id.* at 2392. But here, the district court went further. It not only characterized Broussard as "sick in the head" and badly in need of help, treatment, and education "pertaining to his problems," but it specifically eschewed, in determining the length of the sentence, the § 3553(a)(6) factor of avoiding unwarranted sentencing disparities among similarly-situated

---

[8] Under this section, the sentencing court

in determining whether to impose a term of imprisonment, and, if a term of imprisonment is to be imposed, in determining the length of the term, shall consider the factors set forth in section 3553(a) to the extent that they are applicable, recognizing that imprisonment is not an appropriate means of promoting correction and rehabilitation. . . .

18 U.S.C. § 3582(a).

[9] In response to questioning at oral argument about whether the district court did, in fact, commit a *Tapia* violation when it considered the need for Broussard to rehabilitate and to obtain treatment in determining the length of his sentence, counsel for the Government stated that the district court's reasoning "could implicate *Tapia*." It later filed a Rule 28(j) letter arguing that any such violation could not be plain error, a contention which, for reasons discussed herein, we reject.

21

No. 11-30274

individuals in favor of the more "compelling" need "to incarcerate [Broussard] for the treatment that he needs." The court's reliance on Broussard's need for treatment in determining the length of his sentence was error under *Tapia*.

Broussard, however, did not object to his sentence on this ground before the district court, nor did he make the argument in his initial brief–understandably because *Tapia* was not decided until after he was sentenced and after he filed his initial brief. In exceptional circumstances, especially criminal cases, we can, in our discretion, take *sua sponte* notice of errors not presented in either the district court or the appellant's initial brief.[10] We exercise this discretion with the greatest prudence, recognizing that it is only the extraordinary case which will excuse an appellant's failure to make an argument in his initial brief.

Like review of errors not preserved through an objection in the district court, we review an error neither argued in the district court nor presented on appeal for plain error. To demonstrate reversible plain error, Broussard must

---

[10] As a general rule, we do not address arguments an appellant's opening brief failed to raise. *United States v. Bank*, 624 F.3d 261, 264 (5th Cir. 2010) (citing *Cinel v. Connick*, 15 F.3d 1338, 1345 (5th Cir. 1994) ("An appellant abandons all issues not raised and argued in its *initial* brief on appeal.")). Because *Tapia* was decided after Broussard's opening brief was filed, and the record indicates that the district court's sentencing determination relied significantly on the need for Broussard to obtain treatment–no doubt due in large part to the writings in his journal–we broached the possibility of a *Tapia* violation during oral argument. In this special case, fairness and the public interest dictate that we *sua sponte* take notice of the obvious error committed by the district court in explicitly relying on Broussard's need to obtain treatment and rehabilitation in justifying its sentence of 40 years of incarceration, which represented a significant upward variance from the guidelines range. *Cf. Silber v. United States*, 370 U.S. 717, 718 (1962) (recognizing that, "[i]n exceptional circumstances, especially in criminal cases, appellate courts, in the public interest, may, of their own motion, notice errors to which no exception has been taken, if the errors are obvious, or if they otherwise seriously affect the fairness, integrity, or public reputation of judicial proceedings" (quoting *United States v. Atkinson*, 297 U.S. 157, 160 (1936)); *United States v. Pineda-Ortuno*, 952 F.2d 98, 105 (5th Cir. 1992) ("Where plain error is apparent, the issue may be raised *sua sponte* by this court even though it is not assigned or specified."); *United States v. Montemayor*, 703 F.2d 109, 114 n.7 (5th Cir. 1983) ("An appellate court will not consider *sua sponte* an argument not raised in the court below or urged by the litigants except to prevent a miscarriage of justice.").

show "(1) error (2) that is plain and (3) that affects his substantial rights." *United States v. Castillo-Estevez*, 597 F.3d 238, 240 (5th Cir. 2010). "To be 'plain,' legal error must be 'clear or obvious, rather than subject to reasonable dispute.'" *Id.* at 241 (quoting *Puckett v. United States*, 129 S. Ct. 1423, 1429 (2009)). To affect the defendant's substantial rights, the defendant must demonstrate that the error affected the outcome of the district court proceedings. *Puckett*, 129 S. Ct. at 1429; *United States v. Dickson*, 632 F.3d 186, 191 (5th Cir. 2011) (stating that, in the sentencing context, the defendant must demonstrate a "reasonable probability" that, but for the district court's error, he would have received a lesser sentence); *United States v. Williams*, 620 F.3d 483, 496 (5th Cir. 2010) (same). Finally, "[w]e will exercise our discretion to correct plain error if it seriously affected the fairness, integrity, or public reputation of the judicial proceeding." *United States v. Murray*, 648 F.3d 251, 253 (5th Cir. 2011).

As detailed above, the district court committed error in relying on Broussard's rehabilitative needs when it determined the length of his sentence. We now must determine if the district court's error was clear or plain, an inquiry complicated by the fact that the Supreme Court decided *Tapia* after Broussard had been sentenced. At the time of his sentencing, this court had never squarely addressed whether it was permissible for a sentencing court to consider a defendant's rehabilitative needs in lengthening a sentence. *United States v. Henderson*, 646 F.3d 223, 225 & n.4 (5th Cir. 2011). Now, however, the Supreme Court has expressly resolved the issue, holding that such considerations are impermissible. Thus, we must decide whether to judge the district court's error at the time of Broussard's sentencing or at the time of appeal.

The Supreme Court has held that "where the law at the time of trial was settled and clearly contrary to the law at the time of appeal[,] it is enough that an error be 'plain' at the time of appellate consideration." *Johnson v. United States*, 520 U.S. 461, 468 (1997). The Supreme Court has never, however,

addressed whether plain error would be established "where the error was unclear at the time of trial but becomes clear on appeal because the applicable law has been clarified." *Olano*, 507 U.S. at 734.

A recent panel decision of this court would have us consider the plainness of the error as the law stood at the time of Broussard's sentencing. *Henderson*, 646 F.3d at 225. That decision, however, does not account for the fact that the determination of when to judge the obviousness of an error has produced not only an inter-circuit split,[11] but also an intra-circuit split[12] on the question.

---

[11] *Compare United States v. Gonzalez-Aparicio*, 663 F.3d 419, 428 (9th Cir. 2011) ("When the state of the law is unclear at the time of trial and is then clarified by subsequent authority, the district court's error is still not considered plain. . . . Therefore, plain error 'normally means error plain at the time the district court made the alleged mistake.'"); *United States v. Mouling*, 557 F.3d 658, 664 (D.C. Cir.) ("We therefore hold that where, as here, the law was unsettled at the time of trial but becomes settled by the time of appeal, the general rule applies, and we assess error as of the time of trial."), *cert. denied*, – U.S. – , 130 S. Ct. 795 (2009), *with United States v. Crosgrove*, 637 F.3d 646, 656–57 (6th Cir. 2011) ( "However, the requirement that the error be plain means 'plain under current law.' . . . For plain error review, current law 'is the law as it exists at the time of review.'"); *United States v. Gamez*, 577 F.3d 394, 400 (2d Cir. 2009) (per curiam) ("A court of appeals cannot correct an error pursuant to Rule 52(b) unless the error is clear under current law . . . . Whether an error is 'plain' is determined by reference to the law as of the time of appeal." (internal quotation marks and citations omitted)); *United States v. Ziskind*, 491 F.3d 10, 14 (1st Cir. 2007) (citing *Johnson* for the proposition "that error is plain if the law is clear at the time of direct appellate review, even though governing law was unclear at time of trial"); *United States v. Underwood*, 446 F.3d 1340, 1343 (11th Cir. 2006) (noting that "even though the error was not plain at the time of sentencing, the subsequent issuance of [a Supreme Court opinion] establishes that the error is plain at the time of appellate consideration").

[12] Several opinions have held that we consider the law at the time of trial to decide the obviousness of the error. *See, e.g.*, *Henderson*, 646 F.3d at 225 ("[A]n error is plain only if it was clear under current law at the time of trial." (internal quotation marks omitted)); *United States v. Jackson*, 549 F.3d 963, 977 (5th Cir. 2008) ("'Plain' is synonymous with 'clear' or 'obvious,' and at a minimum, contemplates an error which was clear under current law at the time of trial." (quoting *United States v. Garcia-Rodriguez*, 415 F.3d 452, 455 (5th Cir. 2005)); *United States v. Hull*, 160 F.3d 265, 272 (5th Cir. 1998) (same). On the other hand, certain "opinions have concluded that *Johnson* established that the court considers the error at the time of appeal in deciding whether it is plain." *Henderson*, 2011 WL 6223057, at *4 (Haynes, J., dissenting from denial of petition for reh'g en banc) (citing *United States v. Bishop*, 603 F.3d 279, 281 (5th Cir.) ("We determine whether an alleged error is plain by reference to existing law at the time of appeal."), *cert. denied*, – U.S. – , 131 S. Ct. 272 (2010); *United States v. Gonzales-Terrazas*, 529 F.3d 293, 298 (5th Cir. 2008) ("[T]he error need only be plain at the

*United States v. Henderson*, – F.3d – , 2011 WL 6223057, at *3 (5th Cir. 2011) (Haynes, J., dissenting from denial of petition for reh'g en banc).  As Judge Haynes's dissent notes, our earliest discussion of this issue, applying the *Olano* construction of plain error, resolved that we judge the plainness of the error at the time of appeal.  *United States v. Knowles*, 29 F.3d 947, 951 (5th Cir. 1994) ("It is of no consequence that *Lopez* was decided after the proceedings in the district court concluded.  Since this case is on direct appeal, newly announced rules apply." (citing *Griffith v. Kentucky*, 479 U.S. 314, 328 (1987)).  In this case, we will follow our general rule that where "two previous holdings or lines of precedent conflict, the earlier opinion controls and is the binding precedent in this circuit."  *United States v. Wheeler*, 322 F.3d 823, 828 n.1 (5th Cir. 2003) (internal quotation marks omitted).  Accordingly, Broussard should receive the benefit of the Supreme Court's newly announced prohibition on a sentencing court's consideration of the need for the defendant to receive treatment or rehabilitation when it determines the length of his sentence.  We believe this result also embraces the spirit of the Supreme Court's holding in *Griffith v. Kentucky*, 479 U.S. 314, 328 (1987), that a new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases pending on direct review. The district court's error in this case, therefore, was clear or obvious under the law as it exists currently at the time of appellate review.  Thus, the second prong of plain error review is satisfied.

Turning to the third prong, it is evident that the district court's error affected Broussard's substantial rights because the court's reliance on Broussard's need for treatment skewed the sentencing determination. We do not dispute that the district court considered other permissible factors in explaining its chosen sentence for Broussard; however, it is also quite apparent from the

time of appellate consideration.")).

transcript of the sentencing that the district court imposed a sentence—a three hundred percent increase over the guidelines range—based on the court's belief that Broussard was "sick in the head" and in need of treatment.  In fact, the court explicitly found that his need for treatment was more compelling than the need to avoid unwarranted sentencing disparities between Broussard and other similarly-situated defendants convicted of violating 18 U.S.C. § 2422(b).  The sentencing transcript clearly indicates that the court's error affected Broussard's substantial rights.  Finally, our failure to address the district court's obvious error, which would allow such a lengthy, unlawful sentence to stand, would seriously affect the fairness, integrity, and public reputation of judicial proceedings.

Accordingly, because the district court committed plain error in determining the length of Broussard's sentence based on his need to obtain treatment and rehabilitation, we vacate his sentence and remand for resentencing.  Because we vacate and remand on this basis, we express no view on Broussard's remaining challenges to the district court's sentence, or his objection to the district court's consideration of the Government's late-submitted sentencing memorandum.[13]

---

[13] Finally, we take the opportunity to urge the full court to consider the timing question presented by the circumstances in this case: whether we judge the obviousness of error at the time of the district court proceeding or at the time of appellate review.  Given the frequency of plain error review, especially in sentencing cases where intervening decisions clarify or solidify law that was unclear at the time of the district court proceeding, but clear by the time of appellate review, it is an issue worthy of the full court's attention, as highlighted most recently by Judge Haynes. *Henderson*, 2011 WL 6223057, at *4-5 (Haynes, J., dissenting from denial of petition for reh'g en banc).

No. 11-30274

IV.

In sum, we hold that the district court did not plainly err in accepting Broussard's plea of guilty to the attempted violation of 18 U.S.C. § 2422(b) based on the factual record with respect to victims TL and KH. After a review of the record, we cannot find that any error the district committed would be considered plain because whether Broussard's actions amounted to a substantial step toward persuading the minor victims to engage in criminal sexual activity is subject to reasonable dispute under the caselaw. As a consequence, his convictions are AFFIRMED. We VACATE Broussard's sentence and REMAND for resentencing because the district court plainly erred in relying on the need for Broussard to obtain rehabilitation and treatment in choosing the length of his sentence.

AFFIRMED IN PART, VACATED AND REMANDED IN PART.