# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 19-50949

United States Court of Appeals
Fifth Circuit

**FILED**
April 30, 2020

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

       Plaintiff - Appellee

v.

FRANCISCO RODRIGUEZ-SALDANA, also known as Francisco Saldana-Rodriguez,

       Defendant - Appellant

Appeal from the United States District Court
for the Western District of Texas

Before OWEN, Chief Judge, and HIGGINBOTHAM and WILLETT, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

Appellant Francisco Rodriguez-Saldana was sentenced to 24 months' imprisonment after pleading guilty to felony illegal reentry. He was in the United States to receive necessary eye surgery. This surgery became part of the dialogue between counsel and the district court at the sentencing hearing. Now, Rodriguez-Saldana contends the prospect that he would receive surgery while in prison was a "dominant factor" in the sentence imposed, which would

No. 19-50949

be improper under the Supreme Court's decision in *Tapia v. United States*.[1] Reviewing for plain error, we affirm.

## I.

Rodriguez-Saldana, a citizen of Mexico, pled guilty in August 2019 to illegally reentering the United States after removal.[2] This charge was precipitated by his December 2018 arrest for possession of less than one gram of a controlled substance, which was dismissed for insufficient evidence.

After entering federal custody, an immigration check revealed two prior convictions for illegal reentry. Rodriguez-Saldana was first ordered removed on January 7, 2010. He was sentenced to eight months' imprisonment for his first illegal reentry conviction in April 2010 and to 16 months' imprisonment for his second such conviction in June 2014. These convictions, along with other state convictions for possession with intent to deliver a controlled substance (September 2009), failure to identify (May 2014), and possession of less than one gram of a controlled substance (July 2017), led to a criminal history category of V and an adjusted offense level of 16 in Rodriguez-Saldana's presentencing report (PSR). This was reduced to 13 for acceptance of responsibility. Rodriguez-Saldana's imprisonment range under the Sentencing Guidelines was 30 to 37 months.

At the sentencing hearing, the district court asked Rodriguez-Saldana about his family in Mexico and asked, "Wouldn't you rather be with them than in jail?" Rodriguez-Saldana answered, "I needed an operation, and I can't pay it over there." This was the first mention of the eye surgery at the brief hearing.

Next, the Government, when asked its position on the sentence, said it considered the Guidelines range of 30 to 37 months appropriate since

---

[1] 564 U.S. 319, 332 (2011).
[2] 8 U.S.C. § 1326.

2

Rodriguez-Saldana has received "higher and higher sentences each time he's come here" and been convicted of illegal reentry. The district court said, "That works fine. Eight months to 16 months, now to 30 months."

In response, Rodriguez-Saldana's counsel explained that his client was in the United States to undergo necessary eye surgery. He then argued that the age of some of Rodriguez-Saldana's offenses overstated his criminal history. Subtracting these older offenses would mean an 18- to 24-month range. Counsel lobbied for a sentence at the bottom of this range. After counsel's argument, the district court said, "Well, it needs to go up. So it still can—we can get there." That is, a sentence within this new proposed range would still yield an increase over Rodriguez-Saldana's last 16-month sentence for illegal reentry.

The court then directly addressed Rodriguez-Saldana, who explained he had sought a medical visa but had been denied. The district court stated, "I guess the good news is, now that you're in federal prison, you will get very good medical care." Departing downward from the Guidelines, the court pronounced a sentence of 24 months "among other things, so that he will have time to get his eye surgery." Rodriguez-Saldana's counsel then offered more details: The surgery was independently scheduled for December 15, and Rodriguez-Saldana was working to pay for the surgery and had paid half up front.

The court responded to this information: "Well, then the Court recommends that he be sent to the Fort Worth Bureau of Prison Medical Center with his records so that he can get the eye surgery done there, hopefully." Finally, the court warned Rodriguez-Saldana that if he returned to the United States illegally, "next time, instead of 24 months, it'll be more like 48 months. And then the next time will be 96 months. You understand how it works now?" Rodriguez-Saldana did not object.

No. 19-50949

The written judgment recommended that "[t]he defendant shall serve this sentence at the Fort Worth Bureau of Prison's Medical Center and receive the necessary medical care pertaining to his eye(s) and the surgery he requires." In the written Statement of Reasons (SOR), the court checked "Criminal History Inadequacy" as a reason for departing downward. As the basis for departure, the court wrote that it "found the criminal history to be overstated and the defendant has a medical issue requiring eye surgery."

## II.

This court reviews a sentence for abuse of discretion. We presume that a within-Guidelines sentence is reasonable,[3] a presumption that is rebutted when the district court gives significant weight to an improper factor.[4] Since Rodriguez-Saldana did not object to his sentence, we review for plain error. Under the four-prong framework of plain-error review, Rodriguez-Saldana must show (1) an error (2) that is "clear or obvious" and that (3) "affected [his] substantial rights."[5] If the first three prongs are satisfied, we may exercise our discretion to correct the error if it (4) "seriously affects the fairness, integrity or public reputation of judicial proceedings."[6]

## III.

The sole issue in this appeal is whether the district court violated 18 U.S.C. § 3582(a) and *Tapia v. United States*, which prevent a sentencing court from "impos[ing] or lengthen[ing] a prison sentence to enable an offender to complete a treatment program or otherwise to promote rehabilitation."[7]

"Our caselaw applying § 3582(a) and *Tapia* holds that 'a sentencing court errs if a defendant's rehabilitative needs are a dominant factor that informs

---

[3] *United States v. Alonzo*, 435 F.3d 551, 554 (5th Cir. 2006).

[4] *United States v. Cooks*, 589 F.3d 173, 189 (5th Cir. 2009).

[5] *Rosales-Mireles v. United States*, 138 S. Ct. 1897, 1904–05 (2018).

[6] *Id.* at 1905.

[7] 564 U.S. at 335.

the district court's sentencing decision.'"[8] But "we have never required the appellant to establish that the court's improper reliance on rehabilitation considerations was the *sole* factor in sentencing."[9] A court commits no *Tapia* error—and a defendant is thus not entitled to a resentencing—if the need for rehabilitation is a "secondary concern" of the court or "additional justification" for the sentence.[10] It is not error to "discuss[] the opportunities for rehabilitation within prison or the benefits of specific treatment or training programs."[11] Along the same lines, a court can "urge the BOP to place an offender in a prison treatment program."[12]

The chance that Rodriguez-Saldana would get his eye surgery was mentioned by the district court several times at the sentencing hearing and in the written judgment and SOR. We must answer Rodriguez-Saldana's contention that the eye surgery was a dominant factor, not merely a secondary concern, in the arrived-at sentence. Rodriguez-Saldana points to the district court's surgery-related comments—for example, that "I guess the good news is, now that you're in federal prison, you will get very good medical care" and that "[t]he Court will sentence [Rodriguez-Saldana] to 24 months in prison, among other things, so that he will have time to get his eye surgery."

A survey of statements that have been found to be improper in this context will aid our review. In *Tapia*, the sentencing court erred by stating, for example, that "[t]he sentence has to be sufficient to provide needed correctional treatment."[13] The sentencing court also stated that the "number one" thing "is

---

[8] *United States v. Galvan Escobar*, 872 F.3d 316, 320 (5th Cir. 2017) (quoting *United States v. Pillault*, 783 F.3d 282, 290 (5th Cir. 2015) (alterations and quotation marks omitted)).

[9] *United States v. Wooley*, 740 F.3d 359, 366 (5th Cir. 2014).

[10] *Pillault*, 783 F.3d at 290.

[11] *Tapia*, 564 U.S. at 334.

[12] *Id.*

[13] *Id.* (cleaned up).

the need to provide treatment" and ensure "she is in long enough to get the 500 Hour Drug Program."[14] To the *Tapia* Court, "[t]hese statements suggest that the court may have calculated the length of Tapia's sentence to ensure that she receive certain rehabilitative services."[15] This was improper, as "a court may not impose or lengthen a prison sentence to enable an offender to complete a treatment program or otherwise to promote rehabilitation."[16]

Our cases finding *Tapia* error have done so based on statements like these. In *United States v. Garza*, we found error where the district court departed upward because the defendant "should be required [or] at least be given an opportunity to participate in that residential institution drug treatment program" to "get [the defendant] straightened out."[17] In *United States v. Broussard*, applying plain-error review, we found error *sua sponte* where the court stated that the defendant "needs help badly," that the defendant "needs medical care and treatment," and that there was a "compelling . . . need to incarcerate this individual for the treatment that he needs."[18] In *United States v. Escalante-Reyes*, we also found plain error where the court stated, for example, that "there's a temper and anger problem here . . . [a]nd that's got to be the basis for what good prison will do for this Defendant."[19] And in *United States v. Culbertson*, we found error where the district court based its sentence in part on giving the defendant "a period of time where [he] can, once again, get clean and sober and stay clean and sober."[20] When asked why it imposed a 30-month sentence, a steep upward

---

[14] *Id.*

[15] *Id.* at 334–35.

[16] *Id.* at 335.

[17] 706 F.3d 655, 660–61 (5th Cir. 2013).

[18] 669 F.3d 537, 552 (5th Cir. 2012).

[19] 689 F.3d 415, 423 (5th Cir. 2012) (en banc).

[20] 712 F.3d 235, 237–38, 244–45 (5th Cir. 2013).

departure from the five-to-11-month Guidelines range, the *Culbertson* sentencing court answered, "Because I think you need that time to get yourself stabilized. I think if we gave you within the guidelines, you would be there and then quickly out and be right back here."[21]

On the other hand, we have not found *Tapia* error where "the district court merely advises the defendant of rehabilitative opportunities or expresses its hope that the defendant will take advantage of such rehabilitative programming while imprisoned."[22] In *United States v. Galvan Escobar*, we affirmed the district court, which stated it "hope[d]" the defendant could get help in prison "and therefore requested the BOP provide it."[23] And in *United States v. Pillault*, we found no error where "the court acknowledged [the defendant's] mental health history and the 'need to address his abuse of alcohol and narcotics,' [but] it did so immediately after referring to the testimony that . . . [the defendant's] risk of future dangerous[ness] was much higher if he continued to abuse substances."[24]

Our post-*Tapia* cases, however, stress that we look at the record as a whole.[25] Here, we first recognize the district court's clearest sentencing criterion in this case: that Rodriguez-Saldana receive a significantly longer sentence for third illegal reentry than he received for his second or his first. The court viewed this as a necessary escalation, as seen when it originally agreed with the Government's position that the Guidelines range was appropriate: "Yeah. He went from—yeah. That works fine. Eight months to 16 months, now to 30 months." The court consistently returned to the idea of doubling, or at least substantially increasing, each consecutive sentence. At

---

[21] *Id.* at 237.
[22] *Wooley*, 740 F.3d at 365.
[23] 872 F.3d at 321.
[24] 783 F.3d at 291.
[25] *See Pillault*, 783 F.3d at 292.

the end of the hearing, the court warned Rodriguez-Saldana: "So if you come back, next time, instead of 24 months, it'll be more like 48 months. And then the next time will be 96 months. You understand how it works now?"

With that concern in mind, the court was willing to accept Rodriguez-Saldana's argument that his criminal history was overstated because the adjusted range would still accomplish the primary objective of increasing Rodriguez-Saldana's sentence. Rodriguez-Saldana's last sentence was 16 months and the new range, after subtracting the outdated, unrelated criminal-history points, was 18 to 24 months. The court stated the sentence "needs to go up" but "we can get there" with the new range—it saw room at the upper end of Rodriguez-Saldana's proposed range to accommodate its intent to substantially increase his sentence.

Our view is that the district court's desire to increase Rodriguez-Saldana's sentence in relation to prior sentences was a dominant factor. A secondary concern was that some of the criminal-history points were dated and unrelated to illegal reentry. The court accommodated that secondary concern while staying true to its main guidepost for the sentence's length.

Still, we must contend with the court's troubling statements that it imposed the sentence "among other things, so that he will have time to get his eye surgery" and, in the SOR, that the defendant "has a medical issue requiring eye surgery." These comments could indicate, as Rodriguez-Saldana argues, that while the court had other concerns in mind, the eye surgery was at least a dominant factor in the specific sentence it chose. Reviewing the full sentencing transcript, however, we conclude the eye surgery was at most a secondary concern for the sentence. The only argument Rodriguez-Saldana's counsel made for sentence reduction was based on the outdated offenses; he did not argue that the justification for Rodriguez-Saldana's presence in the United States warranted a lighter sentence. When the court pronounced the

8

24-month sentence, the eye surgery had been mentioned as the reason for Rodriguez-Saldana's presence but most of the minimal information the court learned about the surgery had not yet been offered. After the sentence was pronounced, more information came out about the surgery—that it had already been scheduled, and that Rodriguez-Saldana had paid half and was working to pay the full cost on his own—but Rodriguez-Saldana's counsel did not raise this as a reason for a reduced sentence and the court did not indicate how or whether it adjusted the sentence based on what it knew of the surgery.

In sum, reviewing for clear and obvious error, we do not find enough indication that the district court extended Rodriguez-Saldana's sentence to allow him time to have eye surgery. The district court's statements as to the possible availability of eye surgery are not clear error, nor is the court's recommendation that Rodriguez-Saldana be sent to a specific medical facility. After all, the *Tapia* Court noted that "a court may urge the BOP to place an offender in a prison treatment program."[26]

## IV.

Rodriguez-Saldana has not shown clear and obvious error. Accordingly, we affirm the sentence of the district court.

---

[26] 564 U.S. at 334.