# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

March 22, 2013

No. 11-10917

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

TODD MITCHELL CULBERTSON,

Defendant-Appellant.

Appeal from the United States District Court
for the Northern District of Texas

Before STEWART, Chief Judge, and GARZA and ELROD, Circuit Judges.

CARL E. STEWART, Chief Judge:

Defendant-Appellant Todd Mitchell Culbertson ("Culbertson") appeals his revocation sentence because he contends that the district court impermissibly based the length of the sentence on the court's perception of his rehabilitative needs, in violation of *Tapia v. United States*, 131 S. Ct. 2382 (2011). The district court sentenced Culbertson to 30 months imprisonment, followed by 113 days in a residential reentry program, which was above his advisory guideline range of 5 to 11 months imprisonment. We conclude that the district court based Culbertson's sentence on its perception of the defendant's rehabilitative needs. We therefore VACATE the sentence and REMAND for resentencing.

No. 11-10917

## I. FACTUAL AND PROCEDURAL BACKGROUND

In January 2001, Culbertson pled guilty to possession with intent to distribute methamphetamine. The district court sentenced him to 87 months of imprisonment, followed by 5 years of supervised release. After his release from prison, Culbertson violated his conditions of supervised release by using and possessing methamphetamine on six separate occasions, using and possessing marijuana, and failing to complete his 120-day residential reentry program by failing to report after 7 days. At the revocation hearing on September 22, 2011, the recommended guideline range of imprisonment was 5 to 11 months. Defense counsel argued for a within-guidelines sentence, emphasizing that Culbertson had struggled with a drug problem intermittently but had been relatively successful while on supervised release for several years, and that his failure to report timely to the residential reentry program was justified. He concluded by stating that he would "object to anything above the guideline sentence as substantively and procedurally reasonable." The district court found Culbertson in violation of his supervised release and revoked same.

Prior to imposing the sentence, the district court noted, "The United States Sentencing Commission policy statements contained in Chapter 7 of the guidelines manual regarding supervised release violations have been duly considered." The district court then sentenced Culbertson outside the guideline range to 30 months of imprisonment, followed by the remaining 113 days of the residential reentry program that the court previously imposed. The district court further ordered that, upon release from imprisonment, Culbertson was to serve 15 months of additional supervised release, with the same terms and conditions as his prior term of supervision. The district court also ordered that the sentence would run consecutively to any sentence imposed in Culbertson's pending state court case. The district court concluded imposition of the sentence by stating, "While under supervision, Mr. Culbertson committed the violations

of using and possessing methamphetamine and marijuana and failing to complete 120 days at the Volunteers of America. A sentence of 30 months and 113 days will serve as punishment and deterrence from further criminal activity. I have now stated the sentence."

The district court then solicited the parties' objections to the sentence. Defense counsel objected to the "substantive and procedural reasonableness of the sentence," and to the sentence running consecutively to any sentence imposed in the state court case. The district court overruled both objections without further comment.

The district court then told Culbertson:

> Now, Mr. Culbertson, I am not angry at you, and I'm not ordering this sentence because I want to be punitive or to hurt you. What I'm trying to do here is give you a period of time where you can, once again, get clean and sober and stay clean and sober and come out after you serve your sentence and stop using drugs and stay on your meds.
>
> I can see you're an intelligent guy. You're competent and you're capable, but, apparently, you have to stay on your meds to do that, and I'm told that when you're out, you don't really stay on your meds, and that causes a cycle of problems. So I want you to work on that while you're in the [Bureau of Prisons ("BOP")].

Then, after discussing with Culbertson whether he might benefit from the BOP's 500-hour drug program, the district court said, "I want you to be provided with housing, and I want you to be taken care of while you get yourself together and prepare yourself for reentry into society, and I've put you on 15 more months of supervised release so we can help you do that." The district court added as explanation, "And so that we can also monitor you, because if you're not going to stop using drugs and stop being a threat to society, we'll have to keep sending you back."

3

No. 11-10917

Defense counsel then asked the court why it was imposing a sentence in excess of the guideline range:

> [DEFENSE COUNSEL]:  Is there a need to triple the guidelines, Your Honor?  I'm not being disrespectful to Your Honor.  I'm just asking why so much time?
>
> THE COURT:  Because I think you need that time to get yourself stabilized.  I think if we gave you within the guidelines, you would be there and then quickly out and be right back here.

Culbertson timely filed a notice of appeal.

## II. DISCUSSION

### A.     *Tapia v. United States*

In *Tapia v. United States*, a unanimous Supreme Court held that a district court "may not impose or lengthen a prison sentence to enable an offender to complete a treatment program or otherwise to promote rehabilitation."  131 S. Ct. 2382, 2393 (2011).  In so holding, the Court noted that 18 U.S.C. § 3582(a) "precludes sentencing courts from imposing or lengthening a prison term to promote an offender's rehabilitation."  *Id.* at 2391 (citing 18 U.S.C. § 3582(a)). The Court relied on the plain language of 18 U.S.C. § 3582(a), which provides that, when a sentencing court is determining whether to impose a term of imprisonment and the length of that term, it "shall consider the factors set forth in [18 U.S.C.] section 3553(a)[1] to the extent that they are applicable, *recognizing*

---

[1] These "§ 3553(a) factors" include:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed–
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>> (B) to afford adequate deterrence to criminal conduct;
>> (C) to protect the public from further crimes of the

No. 11-10917

*that imprisonment is not an appropriate means of promoting correction and rehabilitation.*" 18 U.S.C. § 3582(a) (emphasis added).    Interpreting this statutory language, the Court reasoned, "what Congress said was that when sentencing an offender to prison, the court shall consider all the purposes of punishment except rehabilitation—because imprisonment is not an appropriate means of pursuing that goal." *Tapia*, 131 S. Ct. at 2389.

On the other hand, *Tapia* also stated that "[a] court commits no error by discussing the opportunities for rehabilitation within prison or the benefits of specific treatment or training programs." *Id.* at 2392. "To the contrary, a court properly may address a person who is about to begin a prison term about these important matters" and "may urge the BOP to place an offender in a prison treatment program." *Id.* Thus, *Tapia* recognized a distinction between imposing or lengthening a prison sentence based on rehabilitative needs and merely discussing opportunities for rehabilitation while in prison.

During the initial sentencing in *Tapia*, the district court stated, "The sentence has to be sufficient to provide needed correctional treatment, and here I think the needed correctional treatment is the 500 Hour Drug Program." *Id.* at 2385, 2392. The district court again stated that the "'number one' thing 'is the

---

defendant; and
(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
(3) the kinds of sentences available;
(4) the kinds of sentence and the sentencing range established . . .
(5) any pertinent policy statement [of the U.S. Sentencing Commission] . . .
(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

No. 11-10917

need to provide treatment. In other words, so [the defendant] is in long enough to get the 500 Hour Drug Program.'" *Id.* at 2392-93. The Supreme Court concluded: "These statements suggest that the [district] court may have calculated the length of Tapia's sentence to ensure that she receive certain rehabilitative services. And that a sentencing court may not do." *Id.* at 2393. Importantly, Justice Sotomayor's concurring opinion in *Tapia* discussed at length the fact that the sentencing judge carefully weighed all of the § 3553(a) factors, not just the defendant's need for rehabilitation.[2] *Id.* (Sotomayor, J., concurring).

On this record, the Supreme Court vacated and remanded the matter to the Ninth Circuit, holding that the district court may have lengthened the defendant's sentence impermissibly in order to make her eligible for the BOP's 500-hour drug treatment program.[3] *Tapia*, 131 S. Ct. at 2392-93.

**B.     Post-*Tapia***

We have applied the *Tapia* rule to vacate initial sentences post-conviction where the district court explicitly relied on the defendant's need for rehabilitation in imposing or lengthening a sentence. *See, e.g.*, *United States v. Broussard*, 669 F.3d 537, 555 (5th Cir. 2012); *United States v. Escalante-Reyes*, 689 F.3d 415, 423-24 (5th Cir. 2012) (en banc). Until our recent decision in

---

[2] For example, Justice Sotomayor highlighted that the sentencing judge considered, *inter alia*:

> "[t]he nature and circumstances of the offense". . . emphasiz[ing]
> that Tapia's criminal conduct "created a substantial risk of death
> or serious bodily injury" to the smuggled aliens. . . . He noted his
> particular concern about Tapia's criminal conduct while released
> on bail, when she failed to appear and was found in an apartment
> with methamphetamine, a sawed-off shotgun, and stolen mail[.]

*Tapia*, 131 S. Ct. at 2393 (Sotomayor, J., concurring) (internal citations omitted).

[3] The Court left "it to the Court of Appeals to consider the effect of Tapia's failure to object to the sentence when imposed." *Id.* at 2393.

No. 11-10917

*United States v. Garza*, however, it was an open question in this circuit whether *Tapia* applied to terms of imprisonment imposed upon the *revocation of supervised release*, as opposed to the original sentencing.[4]  *See United States v. Garza*, 706 F.3d 655, 657-59 (5th Cir. 2013).  In *Garza*, we held that "a sentencing court may not consider rehabilitative needs in imposing or lengthening *any* term of imprisonment," including for revocations of supervised release.  *Id.* at 659 (emphasis added).  In so holding, we "join[ed] the uniform post-*Tapia* case law in our sister circuits," including the First, Fourth, Eighth, Ninth, and Tenth Circuits.[5]  *See id.* at 657 & n.5 (citations omitted).

*Garza* clarified that, while 18 U.S.C. § 3582(a) proscribes the consideration of a defendant's rehabilitative needs when imposing a sentence, "this does not mean . . . that a district court may make *no* reference to the rehabilitative opportunities available to a defendant."  *Id.* at 659 (citing *Tapia*, 131 S. Ct. at 2392 (stating that "[a] court commits no error by discussing the opportunities for rehabilitation within prison or the benefits of specific treatment or training programs")).  *Garza* noted that "[a] district court also may legitimately 'urge the [Bureau of Prisons] to place an offender in a prison treatment program.'"  *Id.*

---

[4] Although we held in *United States v. Breland* that, despite *Tapia*, a district court could use rehabilitation concerns to determine a revocation sentence, the Supreme Court vacated and remanded that decision for resentencing.  *See United States v. Breland*, 647 F.3d 284, 290 (5th Cir. 2011) ("*Breland I*"), *vacated by Breland v. United States*, 132 S. Ct. 1096 (2012).  The Supreme Court vacated *Breland I* in light of the Solicitor General's brief, which acknowledged the Government's change of position agreeing with the defendant that *Tapia* applies in the revocation context.  *Breland*, 132 S. Ct. at 1096.  On remand, we noted that the Government agreed with the First and Ninth Circuits that district courts may not lengthen a revocation sentence based on rehabilitative needs.  *United States v. Breland*, 463 F. App'x 376, 376-77 (5th Cir. 2012) (per curiam) (unpublished) ("*Breland II*") (citing *United States v. Molignaro*, 649 F.3d 1, 5 (1st Cir. 2011) (Souter, J. (ret.), *sitting by desig.*); *United States v. Grant*, 664 F.3d 276, 282 (9th Cir. 2011)).  Thus, we remanded to the district court for resentencing.  *Id.* at 377.

[5] *See Molignaro*, 649 F.3d at 5; *United States v. Bennett*, 698 F.3d 194, 197 (4th Cir. 2012); *United States v. Taylor*, 679 F.3d 1005, 1006 (8th Cir. 2012); *Grant,* 664 F.3d at 282; *United States v. Mendiola*, 696 F.3d 1033, 1042 (10th Cir. 2012).

(second alteration in original) (quoting *Tapia*, 131 S. Ct. at 2392). "However, when the district court's concern for rehabilitative needs goes further—when the sentencing record discloses 'that the court may have calculated the length of [the defendant's] sentence to ensure that she receive certain rehabilitative services'—§ 3582(a) has been violated." *Id.* at 659-60 (quoting *Tapia*, 131 S. Ct. at 2393). *Garza* further observed that "[o]ur limited precedent post-*Tapia* has described the distinction between legitimate commentary and inappropriate consideration as whether rehabilitation is a "secondary concern" or "additional justification" (permissible) as opposed to a "dominant factor" (impermissible) informing the district court's decision." *Id.* at 660 (citing *United States v. Receskey*, 699 F.3d 807, 810, 812 (5th Cir. 2012) (finding no *Tapia* error where the district court discussed the potential rehabilitation services available only after discussing its unrelated reasons for selecting the length of the defendant's sentence); *Broussard*, 669 F.3d at 545, 551-52 (finding *Tapia* error where the district court described the defendant as "need[ing] help badly" and "sick in the head," and it emphasized "the need to incarcerate [the defendant] for the treatment that he needs")).

The district court in *Garza* imposed a sentence of 24 months' imprisonment, where Garza's advisory guideline range was 3 to 9 months. *Id.* at 660-62. We concluded that the district court impermissibly relied on the defendant's rehabilitative needs, based on its statements that Garza "'should be required [or] at least be given an opportunity to participate in that residential institution drug treatment program' in order to 'get [Garza] straightened out.'"[6] *Id.* at 660-61 (alterations in original). The district court stated that it would not give Garza enough time for a long term program "because I don't think he really

---

[6] In a dissenting opinion, Judge Haynes agreed with the panel majority that *Tapia* applied to revocation sentences, but she disagreed with the conclusion that the district court in *Garza* committed *Tapia* error. *See Garza*, 706 F.3d at 663-64 (Haynes, J., dissenting).

needs that again. I think some of these shorter term programs ought to be enough for him. . . . I'm hoping a 24 month term of imprisonment followed by a 24 month term of supervised release will be enough." *Id.* at 661-62. Accordingly, we concluded that, although the court might have been inclined to impose some upward departure in light of Garza's conduct, "Garza's rehabilitative needs were the dominant factor in the court's mind." *Id.* at 662. We therefore vacated the sentence and remanded for resentencing. *Id.* at 663.

## C.     **Application of *Tapia* to Culbertson's Case**

The Government argues that the district court did not violate *Tapia* because the court did not lengthen Culbertson's sentence based on rehabilitative needs. We disagree.

The district court expressly stated its reason for giving Culbertson three times the guidelines range:

> [DEFENSE COUNSEL]: Is there a need to triple the guidelines, Your Honor? I'm not being disrespectful to Your Honor. I'm just asking why so much time?
>
> THE COURT: Because I think you need that time to get yourself stabilized. I think if we gave you within the guidelines, you would be there and then quickly out and be right back here.

Additionally, the district court explained on several occasions that its purpose in imposing the sentence was to provide Culbertson with enough time for rehabilitation. After the district court imposed its sentence and defense counsel objected, the court stated, "I'm not ordering this sentence because I want to be punitive or to hurt you." Rather, the district court stated, "What I'm trying to do here is *give you a period of time where you can, once again, get clean and sober and stay clean and sober* and come out after you serve your sentence and *stop using drugs* and stay on your meds." While the district court expressly referenced the policy statements in Chapter Seven of the Sentencing Guidelines

and stated that it was imposing a sentence "as punishment and deterrence from further criminal activity,"[7] its other statements on the record evidence that a "dominant factor" in imposing the sentence was Culbertson's need for rehabilitation. *See Garza*, 706 F.3d at 662 (determining that "Garza's rehabilitative needs were the dominant factor in the court's mind"); *cf. Receskey*, 699 F.3d at 811 (concluding that the district court's "concern over rehabilitation may have been an 'additional justification,' but it was not a 'dominant' factor in the court's analysis").

In these ways, this case is similar to *Broussard*, where we concluded that the district court erred in determining the defendant's sentence by relying on his need for treatment to address his sexual fantasies involving minors and his inclinations to engage in such sexual conduct. *See Broussard*, 669 F.3d at 552. Notably, the district court addressed all of the 18 U.S.C. § 3553(a) factors, but it also specifically made statements that Broussard "is sick in the head," "needs help badly," and "is in need of education pertaining to his problems and he needs medical care and treatment." *Id.* at 544-45, 552. We held that the district court

---

[7] We also note that the district court may have relied on "punishment" improperly as a justification for the sentence in this case. *See United States v. Miller*, 634 F.3d 841, 843-44 (5th Cir. 2011), *cert. denied*, 132 S. Ct. 496 (2011) (holding that it is improper for a district court to rely on, *inter alia*, the need "to provide just punishment for the offense" in determining a revocation sentence where the relevant statute, 18 U.S.C. § 3583(e), omits this consideration). While Culbertson raises this issue in passing in his opening brief, he did not object to any potential error on this ground before the district court. Under plain-error review, we conclude that, while the district court plainly erred, this error did not affect Culbertson's substantial rights. *See Broussard*, 669 F.3d at 555 (noting that, to demonstrate reversible plain error, the defendant must show "(1) error (2) that is plain and (3) that affects his substantial rights" ) (citations omitted). "To be 'plain,' legal error must be 'clear or obvious, rather than subject to reasonable dispute.'" *Id.* (citations omitted). "To affect the defendant's substantial rights, the defendant must demonstrate that the error affected the outcome of the district court proceedings." *Id.* (citations omitted). Here, the error was plain, given our *Miller* decision. *See Miller*, 634 F.3d at 843-44. However, the sentencing court only made passing reference to the need for "punishment" in sentencing Culbertson. Thus, we conclude that the court's mere mention of this impermissible factor did not affect Culbertson's substantial rights because the factor did not impact the district court proceedings.

No. 11-10917

committed *Tapia* error in spite of the district court's consideration of the §
3553(a) factors:

> We do not dispute that the district court considered
> other permissible factors in explaining its chosen
> sentence for Broussard; however, it is also quite
> apparent from the transcript of the sentencing that the
> district court imposed a sentence—a three hundred
> percent increase over the guidelines range—based on
> the court's belief that Broussard was "sick in the head"
> and in need of treatment.

*Broussard*, 669 F.3d at 555.

Accordingly, we reject the Government's argument that the district court
here did not lengthen Culbertson's sentence based on his rehabilitative needs
because it also referenced its reasons as "deterrence," "punishment," and the
need to prevent Culbertson from being a "threat to society." Justice Sotomayor's
concurring opinion in *Tapia* further supports this conclusion:  it demonstrates
that the district court, tracking the § 3553(a) statutory factors, provided multiple
reasons for Tapia's sentence, and the Supreme Court still vacated the sentence
because the district court may have relied on the defendant's rehabilitative
needs.[8] *Tapia*, 131 S. Ct. at 2393.  Evidently, in both *Broussard* and *Tapia*, the
sentencing courts expressly considered the § 3553(a) factors at much greater
length than the sentencing court here, but both we and the Supreme Court
vacated the sentences and remanded for resentencing nonetheless. Again, when
defense counsel specifically asked the district court why it was exceeding
Culbertson's guideline range threefold, the court made its reasoning clear: "I

---

[8] By contrast, Justice Sotomayor, who was joined by Justice Alito, expressed skepticism
over the Court's finding that the district court may have lengthened the defendant's sentence
based on the defendant's rehabilitative needs.  *Tapia*, 131 S. Ct. at 2394.  However, she
concluded, "I cannot be certain that [the sentencing judge] *did not* lengthen Tapia's sentence
to promote rehabilitation in violation of § 3582(a).  I therefore agree with the Court's
disposition of this case [vacating the sentence and remanding for resentencing] and join the
Court's opinion in full."  *Id.* (emphasis added).

11

think you need that time to get yourself stabilized." Accordingly, the district court's words are the best evidence of why it did what it did, and they overshadow its passing reference to deterrence, punishment, and the threat Culbertson posed to society.

We also reject the Government's suggestion that a district court impermissibly relies on rehabilitative needs only when the court refers to a specific treatment program as its reason for the length of the sentence. While several cases, including *Tapia*, have involved a district court imposing a sentence of a specific length in part to make the defendant eligible for a certain program, we do not read *Tapia* as *requiring* this element. To the contrary, *Tapia* clearly held that a district court "may not impose or lengthen a prison sentence to enable an offender to complete a treatment program *or otherwise to promote rehabilitation*." *Tapia*, 131 S. Ct. at 2393 (emphasis added). Thus, it is clear to us that the *Tapia* rule contemplates methods that "otherwise . . . promote rehabilitation" beyond facilitating eligibility for a specific treatment program. *See id.*

## D.   Plain-Error Review

Having concluded that the district court erred, we must determine whether that error is reversible. We agree with the Government that defense counsel's objection for "substantive and procedural unreasonableness" before the district court was ineffective to preserve the error alleged here. Thus, we review for plain error. *Broussard*, 669 F.3d at 553.

To demonstrate reversible plain error, Culbertson  must show "(1) error (2) that is plain and (3) that affects his substantial rights." *Id.* (citation omitted). "To be 'plain,' legal error must be 'clear or obvious, rather than subject to reasonable dispute.'" *Id.* (citations omitted).  "To affect the defendant's substantial rights, the defendant must demonstrate that the error affected the outcome of the district court proceedings." *Id.* (citations omitted). Finally, under

the fourth prong of plain-error review, "[w]e will exercise our discretion to correct plain error if it seriously affected the fairness, integrity, or public reputation of the judicial proceeding." *Id.* (citation omitted). As we already have determined that the district court erred, we focus our analysis on the second, third, and fourth prongs.

As to the second prong, we conclude that the error was plain in light of our recent decision in *Garza.* *See Escalante-Reyes*, 689 F.3d at 423 (holding that, "where the law is unsettled at the time of trial but settled by the time of appeal, the 'plainness' of the error should be judged by the law at the time of appeal").

In the sentencing context, the third prong requires that the defendant demonstrate a "reasonable probability" that, but for the district court's error, he would have received a lesser sentence. *United States v. Dickson*, 632 F.3d 186, 191 (5th Cir. 2011) (citation omitted). Here, the error clearly affected Culbertson's substantial rights, as the district court's emphasis on his rehabilitative needs affected the outcome of the sentencing. The district court gave Culbertson a sentence that was three times his guideline range and repeatedly referred to Culbertson's need for rehabilitation, including after defense counsel specifically questioned why the sentence exceeded the guideline range three-fold. These facts are similar to those in *Escalante-Reyes*, where, in response to the defense counsel's objection to the length of the sentence, "the district court mentioned only two things: Escalante–Reyes's quick return to the United States and that '[h]e has a problem with his anger management. He has things that need to be addressed.'" *Escalante-Reyes*, 689 F.3d at 423. Therefore, Culbertson's need for rehabilitation was "such a central part of the district court's explanation of [Culbertson's] sentence that 'we cannot confidently say that the district court would have imposed the same sentence' without it." *Id.* at 424 (citation omitted).

No. 11-10917

As to the fourth prong, we recognized in *Escalante-Reyes* that we respect the sentencing court's discretion in making sentencing decisions, and "we do not view the fourth prong as automatic if the other three prongs are met." *Id.* at 425. Further, the Supreme Court's recent decision in *Henderson v. United States* provides additional guidance for assessing claims of error under plain-error review. 133 S. Ct. 1121, 1130-31 (2013) (holding that the plainness of plain error is to be judged by the law at the time of appellate consideration, rather than at the time of trial). On appeal, the Government had expressed a concern about an expansive plain-error rule that would permit "too many claims of plain error," and the *Henderson* Court emphasized the inherent "screening criteria" contained within the plain-error rule which helps to avoid any "'plain error' floodgates." *See id.* at 1130. The Court noted that, when lower courts of appeals apply the other prongs of plain error–requiring the impairment of substantial rights and error that seriously affected the fairness, integrity, or public reputation of the judicial proceedings–the fact that a defendant failed to object "may well count against" the grant of relief under plain-error review. *Id.*

With these advisories in mind, we nonetheless conclude that the error in the instant case warrants reversal. For one, while we conclude that Culbertson's objection was insufficient to preserve the specific error alleged on appeal, he did object to a sentence three times higher than his guideline range. Moreover, this court already held in *Escalante-Reyes* that the plainness of any error should be judged by the time of appeal; thus, the *Henderson* decision only reifies, rather than supplants, our precedents. *See Escalante-Reyes*, 689 F.3d at 422-23. Accordingly, as in *Escalante-Reyes*, we are not satisfied here that there is other record evidence showing that Culbertson's sentence is "fair," or that the "integrity or public reputation" of the judicial proceeding was protected despite the district court's erroneous consideration of Culbertson's need for rehabilitation in determining the length of his sentence. *See id.* at 425. Based

14

on the sentencing record as a whole, we conclude that the district court's repeated emphasis on Culbertson's need for prison time "to get clean and sober" and "to get [himself] stabilized" affected the "fairness, integrity, or public reputation" of the sentencing proceeding.  *See id.* at 425-26.  Moreover, unlike Escalante-Reyes, who received a *below-guidelines* sentence and we nevertheless reversed his sentence, here, Culbertson's sentence was three times in excess of his advisory range.  *See id.* at 425 ("While the district court gave a slightly-below Guidelines sentence, the circumstances show a probability that the court's mercy was, as Escalante–Reyes noted, "tempered" by the desire to have him receive anger management training.").  We therefore conclude that we should exercise our discretion to recognize this error.  *See id.* at 426; *Garza*, 706 F.3d at 663 (reversing and remanding for resentencing after determining that the district court committed plain error under *Tapia*).

## III. CONCLUSION

Accordingly, the sentence is VACATED, and this matter is REMANDED to the district court for resentencing in a manner not inconsistent with this opinion.

15