# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 14-60222

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

JOSHUA BRANDON PILLAULT,

Defendant - Appellant

United States Court of Appeals
Fifth Circuit

**FILED**

April 10, 2015

Lyle W. Cayce
Clerk

Appeal from the United States District Court
for the Northern District of Mississippi

Before DENNIS, PRADO, and HIGGINSON, Circuit Judges.

STEPHEN A. HIGGINSON, Circuit Judge:

Defendant-Appellant Joshua Pillault pleaded guilty to knowingly and willfully communicating a threat by means of the internet, an instrument of interstate and foreign commerce, concerning an attempt to kill and injure individuals and unlawfully damage and destroy buildings by means of fire and explosives, in violation of 18 U.S.C. § 844(e).  At sentencing, the district court imposed a six-level enhancement, pursuant to Section 2A6.1(b)(1) of the U.S. Sentencing Guidelines Manual ("U.S.S.G."), for conduct evidencing an intent to carry out the threat.  The district court upwardly varied from the Sentencing Guidelines and sentenced Pillault to seventy-two months imprisonment. Pillault now appeals his sentence, challenging the district court's application

No. 14-60222

of the enhancement as well as the reasonableness of the sentence. For the reasons that follow, we AFFIRM.

## FACTUAL BACKGROUND

On October 4, 2012, while playing the online video game "Runescape," Pillault communicated violent threats to other players. Runescape is a fantasy role-playing game that is played online. Players can communicate with each other by typing comments, which appear above the players' characters as well as in a chat box at the bottom of the screen. In response to provocative comments made by another player, Pillault stated that he was going to acquire guns, Molotov cocktails, and pipe bombs in order to reenact the Columbine school shooting at Oxford High School. Pillault threatened to "level [O]xford hi[g]h school" and turn it to "gravel." Pillault also stated that "[i]ts always a good time to talk about columbine" and that he could not "wait to blow brains out of skulls."

The Oxford Police Department ("OPD") received two phone calls, one from a man in Virginia and the other from an employee of the company that owns and operates Runescape, both reporting Pillault's statements. The gaming company sent Pillault's account details to the OPD, which, after enlisting the help of the FBI, traced the offending account's IP address to a computer registered to Pillault's mother. The FBI obtained an arrest warrant and arrested Pillault in their home on October 8, 2014. The FBI also obtained a search warrant for electronic devices, which it executed that same day. The FBI's forensic examiner, who testified at Pillault's sentencing, performed an examination of Pillault's computer and found numerous documents pertaining to the creation of bombs and other explosive devices. Pillault's computer also had folders entitled "columbine" and "serialkiller," which contained pictures relating to the Columbine shooting and other high-profile serial killers. The forensic examiner also found evidence that Pillault had searched on

2

No. 14-60222

YouTube.com for "Super Columbine Massacre RPG," a game that recreated the Columbine Massacre. In addition, Pillault had searched on YouTube and Google for instructions on how to make a sawed-off shotgun and information about Molotov cocktails.

Pillault was indicted and pleaded guilty to Count Two of a two-count indictment, which charged him with knowingly and willfully communicating, over the internet, a threat to attempt to kill and injure individuals and unlawfully damage and destroy buildings and other real and personal property by means of fire and explosives, in violation of 18 U.S.C. § 844(e). At sentencing, the district court heard testimony from several witnesses. The first witness was Dr. Heather Ross, a forensic psychologist who was ordered by the district court to complete a psychiatric examination of Pillault and to report on mental illness, treatment options, and risk assessment. Dr. Ross testified that Pillault started using drugs and alcohol at the age of fourteen and that prior to his arrest he smoked marijuana and drank vodka every day. Dr. Ross discussed Pillault's mental history and explained that Pillault had previously attempted suicide and was hospitalized for aggression and depression. Dr. Ross concluded that "should Mr. Pillault continue to abuse substances his risk for future dangerousness . . . is moderate to high risk; but would be much lower if he was to be able to avoid using substances in the future."

The district court also heard testimony from two of Pillault's ex-girlfriends, whom we will refer to as GF1 and GF2. GF1, who started spending a significant amount of time with Pillault in the eleventh grade, testified about his aggressive tendencies and described him as a bully who frequently got into fights. She testified that Pillault was obsessed with Columbine and that he admired Dylan Klebold, one of the shooters involved in the Columbine massacre. According to GF1, Pillault planned to attack Oxford High School and drew specific plans in a notebook detailing how he would carry out the

3

No. 14-60222

attack. GF1 claimed that Pillault warned her not to go to school on April 20, the anniversary of the Columbine shooting. GF1 also testified that on one occasion, Pillault asked her to take him to Home Depot, where he purchased a long copper pipe that he said he later used to make a pipe bomb.

GF2 testified that she had known Pillault since the fifth grade and that she was dating him during the months surrounding his arrest. GF2 agreed that Pillault was obsessed with Columbine and claimed that he frequently threatened to reenact Columbine at Oxford High School. She believed that Pillault's threats were serious and that he truly wanted to go through with the attack. According to GF2, Pillault had a few specific plans for how he would initiate his attack, one of which involved breaking through the glass walls of the school's cafeteria using pipe bombs and smoke bombs. GF2 claimed that Pillault planned to save up money to buy guns and that she and Pillault went to Wal-Mart to look at gun prices. GF2 testified that on one occasion, Pillault tried to make a bomb out of a glass Sprite bottle, which he filled with kerosene.

The last person to testify at the sentencing hearing was Pillault. Before Pillault took the stand, the parties stipulated to the fact that no weapons, bombs, incendiary substances, materials that could be used to make bombs, or drawings of attack plans were found in Pillault's house. Pillault denied ever having drafted or drawn a plan to attack Oxford High School and claimed that GF1's testimony was untruthful. Pillault also denied GF1's account of the Home Depot visit and claimed that while he did possess a copper pipe, he found it in a park and did not ever make, or plan to make, a bomb with it. Pillault also denied ever having made Molotov cocktails out of Sprite bottles, as GF2 claimed. Pillault discussed at length the harsh culture of online gaming as well as the specific circumstances surrounding his threatening comments, including the fact that he and another player had been "trolling" each other,

4

which Pillault defined as following someone and "saying random things to upset" them.

The Presentence Investigation Report ("PSR"), prepared by the United States Probation Service prior to sentencing, applied a six-level enhancement for "conduct evidencing an intent to carry out [the] threat." U.S.S.G. § 2A6.1(b)(1). Specifically, the PSR cited Pillault's trip to Home Depot to obtain a copper pipe for the purpose of making a pipe bomb as well as his "testing" of Molotov cocktails. Pillault objected to this enhancement, but the district court overruled the objection. The court concluded that "the testimony of the Government is much more believable than the testimony of the defendant on the objections raised by the defendant." The court found GF1's and GF2's testimony to be credible and determined that Pillault did have the intent to carry out his threats. The court sentenced Pillault to seventy-two months imprisonment, forty-eight months longer than the advisory guideline range.

## DISCUSSION

On appeal, Pillault claims that the district court erred in applying the six-level enhancement under § 2A6.1(b)(1) because, Pillault contends, he did not commit an overt act that was substantially and directly connected to the offensive threat. *See United State v. Goynes*, 175 F.3d 350, 355 (5th Cir. 1999) (requiring "some form of overt act" to sustain an enhancement under § 2A6.1(b)(1)); U.S.S.G. § 2A6.1 app. n.1 ("[C]onduct that occurred prior to the offense must be substantially and directly connected to the offense, under the facts of the case taken as a whole."). Second, Pillault claims that the district court's sentence was unreasonable because it did not account for the nature and circumstances of the offense, as mandated by 18 U.S.C. § 3553(a)(1), and because the court gave significant weight to Pillault's need for treatment, in violation of *Tapia v. United States,* 131 S. Ct. 2382 (2011).

No. 14-60222

## A. Sentencing Enhancement

We review the "district court's legal interpretation and application of the sentencing guidelines de novo and its factual findings for clear error." *United States v. Cabrera*, 288 F.3d 163, 168 (5th Cir. 2002) (per curiam). "[I]n determining whether an enhancement applies, a district court is permitted to draw reasonable inferences from the facts, and these inferences are fact-findings reviewed for clear error as well." *United States v. Ramos–Delgado*, 763 F.3d 398, 400 (5th Cir. 2014) (citation and internal quotation marks omitted). In the present case, the district court's determination that Pillault's conduct evidenced an intent to carry out the underlying threat is a factual finding, reviewed for clear error. *See Goynes*, 175 F.3d at 353. The district court's factual finding "is not clearly erroneous if it is plausible in light of the record read as a whole." *United States v. Cooper*, 274 F.3d 230, 238 (5th Cir. 2001). Stated another way, "we will deem the district court's factual findings clearly erroneous only if, based 'on the entire evidence,' we are 'left with the definite and firm conviction that a mistake has been committed.'" *Cabrera*, 288 F.3d at 168 (quoting *Cooper*, 274 F.3d at 238).

Section 2A6.1(b)(1) provides: "If the offense involved any conduct evidencing an intent to carry out such threat, increase by 6 levels." In order to determine whether the enhancement applies, the court should "consider both conduct that occurred prior to the offense and conduct that occurred during the offense; however, conduct that occurred prior to the offense must be substantially and directly connected to the offense, under the facts of the case taken as a whole." U.S.S.G. §2A6.1 app. n.1. This court requires "some form of overt act to sustain a § 2A6.1(b)(1) enhancement." *Goynes*, 175 F.3d at 355. Violent threats alone are not sufficient to justify the enhancement. *See id.*

At the sentencing hearing, the district court heard testimony from two ex-girlfriends regarding Pillault's obsession with Columbine, his specific plans

6

to recreate the Columbine attack, and his efforts to research and acquire materials that would be necessary to achieve his plans. The district court also heard testimony about two specific instances when Pillault made, or attempted to make, bombs. While Pillault denied any actual intent to carry out his threat and denied ever making, or trying to make, a bomb, the district court, presented with conflicting testimony, made a necessary and valid credibility determination. *See United States v. Davis*, 754 F.3d 278, 285 (5th Cir. 2014) (explaining that credibility determinations "in sentencing hearings are peculiarly within the province of the trier-of-fact" (quoting *United States v. Sotelo*, 97 F.3d 782, 799 (5th Cir. 1996))). The district court explicitly stated that it found GF1 and GF2 "more believable" than Pillault and emphasized that Pillault's testimony "was self-serving."[1]  In light of the court's credibility determinations, as well as the record as a whole, it is plausible that Pillault intended to carry out his threat to obtain guns, "backup clips, [Molotov] cocktails, [and] pipe bombs" and "level oxford hi[g]h school." The district court's findings that Pillault actually obtained a copper pipe to make a pipe bomb and tested a home-made Molotov cocktail, and that these overt acts evidenced an intent to carry out the threat, were not clearly erroneous. Pillault's actions could properly be considered actual steps toward the

---

[1] Pillault claims that the district court's credibility finding as to GF2 was erroneous "given the impeachment of her testimony with respect to her text messaging with Mr. Pillault's mother after his arrest." The "impeachment" that Pillault refers to involved the following exchange:

> [Defense Attorney]: You texted with [Pillault's mother] extensively, didn't you?
> [GF2]: I don't know about extensively. We talked a few times, maybe three or four texts. I don't remember any long conversation.

Pillault's attorney then introduced "pages and pages" of text messages sent from GF2 to Pillault's mother. While we are not convinced that this exchange constitutes "impeachment," given the inherent ambiguity in the word "extensively," the point does not change our analysis because, regardless, the district court still assessed GF2 to be "credible."

realization of his threat. *See Goynes*, 175 F.3d at 355 (finding enhancement unwarranted where the defendant's act was "not in any way an actual step toward the realization" of his threat). Accordingly, we affirm the district court's application of the six-level enhancement.

### B. Reasonableness

In *Gall v. United States*, the Supreme Court developed a two-step process for appellate review of a sentence. 552 U.S. 38 (2007). First, this court must determine whether the district court committed a procedural error, "such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence . . . ." *Id.* at 51. If the sentence is procedurally sound, this court then determines whether the sentence is substantively reasonable, applying a deferential abuse-of-discretion standard. *Id.* at 41, 51. "Appellate review for substantive reasonableness is 'highly deferential,' because the sentencing court is in a better position to find facts and judge their import under the § 3553(a) factors with respect to a particular defendant." *United States v. Hernandez*, 633 F.3d 370, 375 (5th Cir. 2011). When a sentence is outside the Guidelines range, this court "may consider the extent of the deviation, but must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance." *Gall*, 552 U.S. at 51. With respect to the § 3553(a) factors, "'[a] non-Guideline sentence unreasonably fails to reflect the statutory sentencing factors where it (1) does not account for a factor that should have received significant weight, (2) gives significant weight to an irrelevant or improper factor, or (3) represents a clear error of judgment in balancing the sentencing factors.'" *United States v. Fraga*, 704 F.3d 432, 440 (5th Cir. 2013) (quoting *United States v. Smith*, 440 F.3d 704, 708 (5th Cir. 2006)).

No. 14-60222

### *1. The Nature and Circumstances of the Offense*

Pillault argues that the sentence imposed is substantively unreasonable because it fails to account for a sentencing factor that should have received significant weight, namely "the nature and circumstances of the offense." *See* 18 U.S.C. § 3553(a)(1). Pillault emphasizes that his offensive, threatening comments were made while he was playing a video game and were part of a conversation between Pillault and another player, who were both purposefully "provoking and goading one another." Pillault claims that purposeful provocation of others with deliberately offensive comments is a common occurrence in online video games. Pillault describes the "circumstances of the offense" as "two hotheads playing an online fantasy video game deliberately provoking one another with the most offensive comments they can muster" and claims that these circumstances were "wholly unaccounted for in the district court's 72-month sentence . . . ." Pillault concludes that because the sentence does not account for this mitigating factor, the sentence is substantively unreasonable. We disagree.

Before the district court announced its sentence, Pillault's counsel made a similar argument, urging the court to find that the circumstances of the offense warranted leniency. By contrast, the government focused on the content of the threats, emphasizing that a threat to reenact Columbine is "so horrific that it's hard for civilized people to even imagine that." After hearing both arguments, the district court responded that it had "to take very seriously [Pillault's] threats" and emphasized that "[t]he offense conduct in this case could have been extremely severe had [Pillault] acted upon the threats." The court concluded that an above-guideline sentence was warranted "because of the nature and circumstances of this offense and the history and characteristics of this defendant . . . ." The court ultimately explained that it chose the given sentence because it was "trying to protect the public."

No. 14-60222

The district court heard each party's description and characterization of the offense and ultimately embraced the government's argument that the nature and circumstances of the offense, specifically the extreme content of the threats, was an aggravating factor rather than a mitigating factor. The forum in which the threats were made was not the only circumstance of the offense, and the court did not abuse its discretion when it found that the nature of the threatened conduct outweighed the fact that the comments were made in an online context. Further, the district court gave significant weight to Pillault's potential future dangerousness and the court's duty to protect the public. *See* 18 U.S.C. § 3553(a)(2)(C). Giving due deference to the district court's balancing of the § 3553(a) factors, *see United States v. Gutierrez*, 635 F.3d 148, 154 (5th Cir. 2011), we conclude that the district court did not abuse its discretion by declining to place significant weight on the forum in which the comments were made and, instead, focusing on the nature of the threatened conduct and the court's need to protect the public. Accordingly, we find that the district court's upward variance from the Guidelines was substantively reasonable.

Within his argument regarding the substantive reasonableness of the sentence, Pillault states that the "court did not articulate, with the fact-specific reasons that are required when imposing an above-guidelines sentence, the particular offense circumstances on which the court was relying and how those circumstances support an above-guidelines sentence." This seems to be an attack on the *procedural* reasonableness of the sentence, rather than the *substantive* reasonableness. *See Gall*, 552 U.S. at 51 (explaining that a district court commits a procedural error when it "fail[s] to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range"). This court has stated that "the district court must more thoroughly articulate its reasons when it imposes a non-Guideline sentence than when it imposes a sentence under authority of the Sentencing

Guidelines." *Smith*, 440 F.3d at 707. While these reasons "should be fact-specific and consistent with the sentencing factors enumerated in section 3553(a)," the district court does not need to "engage in 'robotic incantations that each statutory factor has been considered.'" *Id.* (quoting *United States v. Lamoreaux*, 422 F.3d 750, 756 (8th Cir. 2005)). Here, the district court *did* articulate fact-specific reasons for its imposed sentence. Above all, the court focused on its "duty to protect the public." *See* 18 U.S.C. 3553(a)(2)(C). Having elaborated on this public protection concern, the court was not obligated to detail the "particular offense circumstances . . . justifying a sentence outside the guideline range," as Pillault contends. Accordingly, we find that to the extent Pillault claims that the district court procedurally erred by not adequately explaining its reasons for the chosen sentence, that claim fails.

*2.* Tapia v. United States*, 131 S. Ct. 2382 (2011)*

Pillault's final contention is that the district court violated *Tapia v. United States*, by giving significant weight to Pillault's need for mental health and drug and alcohol treatment when choosing the given sentence. In *Tapia*, the Supreme Court held that "a court may not impose or lengthen a prison sentence to enable an offender to complete a treatment program or otherwise to promote rehabilitation." 131 S. Ct. at 2393. Post-*Tapia*, this court has explained that "a sentencing court errs if a defendant's rehabilitative needs are 'a "dominant factor" . . . [that] inform[s] the district court's [sentencing] decision.'" *United States v. Walker*, 742 F.3d 614, 616 (5th Cir. 2014) (quoting *United States v. Garza*, 706 F.3d 655, 660 (5th Cir. 2013)); *see also United States v. Wooley*, 740 F.3d 359, 366 (5th. Cir. 2014) ("[W]e have held that *Tapia* error occurs when rehabilitation is *a* dominant factor in the court's sentencing decision, and we have never required the appellant to establish that the court's improper reliance on rehabilitation considerations was the *sole* factor in sentencing."). On the other hand, the district court does not violate *Tapia* if

11

the need for rehabilitation is only a "secondary concern" or an "additional justification" for the sentence. *Walker*, 742 F.3d at 616; *see also Garza*, 706 F.3d at 660 ("Our limited precedent post-*Tapia* has described the distinction between legitimate commentary and inappropriate consideration as whether rehabilitation is a 'secondary concern' or an 'additional justification' (permissible) as opposed to a 'dominant factor' (impermissible) informing the district court's decision."). Notably, "[a] court commits no error by discussing the opportunities for rehabilitation within prison or the benefits of specific treatment or training programs." *Tapia*, 131 S. Ct. at 2392.

In the present case, the district court discussed the defendant's history, including his lack of meaningful work history, his extensive disciplinary record in school, and his self-proclaimed ability to "con [his] way back into [his] family members' hearts." The court then stated:

> . . . I have a great responsibility not to make one mistake. . . . And what I've seen of your history does not warrant this Court making a mistake for you. Now, the sentence to be imposed will be above the advisory guidelines range because of the nature and circumstances of this offense and the history and characteristics of this defendant pursuant to 18 USC Section 3553(a)(2) [sic]. . . .
>
> The sentence should reflect the seriousness of the offense, should promote respect for the law and provide just punishment. I also have a duty to protect the public. And in the letters that I read, which I want to make part of this proceeding, there was very little concerns about protecting the public. The public deserves to be protected.
>
> Now, I will agree it also needs to be protected from further crimes by you. You also do need any educational or vocational training or medical care that you can get. And to the extent I can get that for you while you're incarcerated, I will.
>
> But I think a sentence above the advisory guideline range is appropriate in this case, first, to

protect the public from further crimes from this defendant; second, I have considered the nature and characteristics of this defendant. His mental health history is of concern to the Court.

And what I read from the statement was to the effect "as long as he stays sober." But otherwise, he is a possible high threat to someone, not necessarily school children, but to anyone who might cross his path.

He has undergone multiple mental evaluations outlining his need for mental health treatment. The offense conduct in this case could have been extremely severe had he acted upon the threats. I need to address his abuse of alcohol and narcotics.

So I find that a sentence above the advisory guidelines range is appropriate.

The court sentenced Pillault to seventy-two months in prison and recommended that "he participate in a residential drug-abuse-treatment program while confined, if deemed appropriate by the Bureau of Prisons." After the court announced the sentence, Pillault's counsel objected, stating that "to the extent that Your Honor has imposed this particular sentence as a means, even in part, of affording the defendant drug treatment rehabilitation, we believe that is an improper reason to impose or determine the length of the sentence." The court replied, explicitly stating: "I didn't impose the length for that reason. I'm trying to protect the public. . . . I think I made that clear. But you had requested that he get treatment, so I am going along with that." After the sentencing hearing, the court issued its written statement of reasons. The court stated:

Pursuant to the factors enumerated under 18 U.S.C. § 3553(a), a sentence above the advisory guideline range is appropriate in this case for a number of reasons. First and foremost, the need to protect the public from further crimes from the defendant. Second, the court considers the nature and

> characteristics of the defendant. The defendant's mental health history is of a concern to the court and the defendant [sic] need for ongoing mental health treatment. The defendant has undergone multiple mental evaluations which outline the defendant's needs for continued mental health treatment. The offense conduct in this case could have been extremely severe had the defendant acted upon the threats he admitted making. The defendant's abuse of alcohol and narcotics also need to be addressed and a sentence of additional custody will provide the defendant with the needed mental health, drug, and alcohol treatment. Therefore, the court finds a sentence above the advisory guideline range is appropriate in this case.

The district court's statements, both oral and written, make clear that the dominant factor motivating the court's sentencing decision was the goal to protect the public. The court referred to this motivation, as well as, relatedly, Pillault's potential future dangerousness, throughout its explanation for the sentence. The court began by highlighting that it had "a great responsibility not to make one mistake" and that "[t]he public deserves to be protected." The court concluded that an above-Guidelines sentence was appropriate "to protect the public from further crimes from this defendant" and emphasized that the "offense conduct could have been extremely severe had [Pillault] acted upon the threats." While the court acknowledged Pillault's mental health history and the "need to address his abuse of alcohol and narcotics," it did so immediately after referring to the testimony that it had just heard from Dr. Ross—that Pillault's risk of future dangerous was much higher if he continued to abuse substances. Most significant, in response to Pillault's objection, the court denied having imposed the given sentence in order to promote rehabilitation and clarified, instead, that it was "trying to protect the public."

14

Pillault highlights that in the subsequent written statement of reasons, the court noted that "a sentence of additional custody will provide the defendant with the needed mental health, drug, and alcohol treatment." We decline to consider this statement in isolation.[2] In light of the rest of the court's explanation, including the court's explicit rejection of the notion that it was motivated by a desire to give Pillault access to treatment, this written statement indicates, at most, that rehabilitation was a secondary factor or merely an additional justification that the court gave for its sentence. *See*

---

[2] At oral argument, the government urged this court to disregard the written statement of reasons in light of the "unambiguous" oral pronouncement. The government cited this circuit's "well settled law that where there is any variation between the oral and written pronouncements of sentence, the oral sentence prevails." *United States v. Shaw*, 920 F.2d 1225, 1231 (5th Cir. 1991). In one of the earliest cases in which we applied that rule, this court explained that Federal Rule of Criminal Procedure 43 "requires that the defendant be present when sentence is announced by the court, and Rule 32(b) requires that the judgment of conviction shall set forth the sentence. It follows that where there is a discrepancy between the oral pronouncement and the written judgment and commitment, the former must control." *Henley v. Heritage*, 337 F.2d 847, 848 (5th Cir. 1964). The present case does not involve an oral pronouncement of sentence that conflicts with a written judgment and commitment, however. Instead, we are reviewing the court's oral explanation of the chosen sentence along with its subsequent written statement of reasons. The government cites no cases that apply the oral-trumps-written rule to a statement of reasons. Title 18 U.S.C. § 3553(c), entitled "[s]tatement of reasons for imposing a sentence," states: "The court, at the time of sentencing, shall state in open court the reasons for its imposition of the particular sentence, and, if the sentence . . . is not of the kind, or is outside the range, described in subsection (a)(4), the specific reason for the imposition of a sentence different from that described, *which reasons must also be stated with specificity in a statement of reasons form* issued under section 994(w)(1)(B) of title 28 . . . ." (emphasis added). Title 28 U.S.C. § 994(w)(1) provides that "[t]he Chief Judge of each district court shall ensure that, within 30 days following entry of judgment in every criminal case, the sentencing court submits to the Commission . . . the judgment and commitment order [and] the written statement of reasons for the sentence imposed (which shall include the reason for any departure from the otherwise applicable guidelines range . . .)[.]" The Sixth Circuit, elaborating on this requirement, has concluded that the written statement of reasons "was not intended as a procedural safeguard for any particular defendant; rather, '[t]he ostensible purpose of § 994(w) is to make the courts report information and sentences and departures to ensure a measure of consistency in sentencing throughout the country.'" *United States v. Denny*, 653 F.3d 415, 422 (6th Cir. 2011) (quoting *United States v. Ray*, 273 F. Supp. 2d 1160, 1164 (D. Mont. 2003)). The Sixth Circuit reasoned that "[b]ecause it was merely intended to serve a record-keeping function, courts' written statement of reasons have not always been crafted with the same precision that judges heed during the oral sentence." *Id.*

No. 14-60222

*Walker*, 742 F.3d at 617 (finding no *Tapia* error where the district court referred to rehabilitation only after addressing § 3553(a) factors that supported the sentence). Accordingly, we find that the district court did not violate *Tapia*.

## CONCLUSION

For the reasons above, we AFFIRM the district court's sentence.