# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-51069

United States Court of Appeals
Fifth Circuit

**FILED**
September 27, 2017

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

CARLOS GERARDO GALVAN ESCOBAR, also known as Carlos Galvan,

Defendant - Appellant

Appeal from the United States District Court
for the Western District of Texas

Before WIENER, HIGGINSON, and COSTA, Circuit Judges.

STEPHEN A. HIGGINSON, Circuit Judge:

Carlos Gerardo Galvan Escobar pleaded guilty to unlawful reentry following removal. *See* 8 U.S.C. § 1326(a). At sentencing, he argued that his mental health and drug abuse issues warranted leniency. The district court agreed. So it announced a below-Guidelines sentence. Escobar responded that he might not be eligible for mental health or drug abuse treatment programs in prison. The court again agreed. It therefore expressed hope Galvan Escobar could get help—and even recommended treatment—but conceded the sentence might be too brief for him to join a prison rehabilitation program. Galvan Escobar now argues on appeal that the district court, by doing what he asked and knowingly imposing a sentence likely too short for rehab, improperly

No. 16-51069

*imposed* or *lengthened* the sentence *to promote* rehab. *See Tapia v. United States*, 564 U.S. 319 (2011). We AFFIRM.

## I.

Galvan Escobar, a citizen of Mexico, pleaded guilty to one count of violating 8 U.S.C. § 1326(a), which generally makes it unlawful for a non-citizen previously deported or removed from the United States to enter or be found in the country without the Attorney General's consent. Because he had several prior convictions, Galvan Escobar's Guidelines range was 37 to 46 months' imprisonment.

At sentencing, defense counsel urged the district court to impose a below-Guidelines sentence because Galvan Escobar had grown up in the United States and suffered from mental health and substance abuse issues. Specifically, counsel argued that the Guidelines range was "excessive, given his history, given his mental health," and thus asked the sentencing court to "consider imposing a sentence below the guideline range in this case . . . with that in mind." During allocution, Galvan Escobar conveyed his plan not to return to the United States and to work instead at a resort in Mazatlán. He closed by saying, "I need to make my mental state stable, so I'm going to try to find medication, that way I don't have to self-medicate and just—I ask for your mercy, Your Honor."

The government stuck to the Guidelines, urging the district court to impose a 40- to 42-month sentence. The government acknowledged this case involved "sympathetic elements," and that Galvan Escobar did have "mental" and "substance abuse issues" that needed considering. But the prosecutor asserted that Galvan Escobar's "extensive" criminal history "cannot be ignored," and thus suggested the district court "combine" Galvan Escobar's "criminal history with those other issues that he has and the rehabilitative nature that [the government] hope[s] is in the sentence that the Court imposes

. . . ." The government then observed, "He does need time to go through a treatment program. He just said himself that he needs time to address those issues. He needs that time, but he also needs time—he needs to be held accountable for his actions for his criminal conduct[.]"

After hearing both sides, the district court revealed that its "prehearing feel" for the appropriate sentence was 40 months' imprisonment. But the district court then disclosed that, given defense counsel's oral argument, "perhaps the 40 months is a little more than [Galvan Escobar] deserves." The court concluded that it was "hard to overlook his criminal history and so that's persuasive," but noted that defense counsel was "persuasive in what [counsel] said for [Galvan Escobar] today as well." "[B]alancing those," the court explained, "I think that a sentence just below the [G]uideline would be one that I would feel more comfortable with and that's 36 months, which is just a month below the [G]uidelines[.]"

After the district court announced Galvan Escobar's below-Guidelines sentence, defense counsel added,

> As to the mental health question, . . . I would ask the Court to consider in that regard, in these situations with the immigration cases, they don't necessarily get that treatment, and oftentimes we have clients that have gone through this process and by virtue of their history was denied that, so if that does weigh in the Court's consideration in terms of whether this treatment would be available or not, I don't think there's any guarantees he would see that at our institutions. So with that, Your Honor, if that does—if that is sort of in the calculus, I would ask the Court to consider that may not necessarily happen and obviously it's not within the Court's control in the end.

The district court responded,

> Certainly, I would hope he gets that treatment, but I guess I do my part over here and hope that everybody else does their part and hope that he gets the mental health treatment that he needs, as well as the drug treatment if that's available, that he be screened

for any addiction for severity of addiction and found to have a sufficiently severe drug addiction at the time that he participate in the RDAP[1] program. I'm not sure if he'll have enough time for 36 months, but that'll be the Court's request.

Defense counsel then objected "to the sentence imposed as unreasonable given the reasons set forth in the allocution," but neither raised *Tapia* nor asserted that the district court had improperly imposed or lengthened the sentence to promote rehabilitation.

The district court later issued its written Judgment, recommending that the Bureau of Prisons (BOP) either admit Galvan Escobar to a 500-hour comprehensive drug abuse treatment program or provide him the benefits of drug abuse treatment programs. The district court also issued a Statement of Reasons, explaining that Galvan Escobar's history and characteristics justified a slight downward variance from the Guidelines. *See* 18 U.S.C. § 3553(a)(1). The district court further recorded that the variance was "pursuant to the defendant's past mental health issues, because defendant resided in the United States from the age of 4 years to 18 years, and for the reasons stated on the record." Galvan Escobar filed his appeal the next day. He now invokes the Supreme Court's *Tapia* decision to challenge his sentence.

## II.

Galvan Escobar's objection to the sentence as "unreasonable given the reasons set forth in the allocution," did not preserve his *Tapia* argument. *United States v. Culbertson*, 712 F.3d 235, 243 (5th Cir. 2013). We therefore review for plain error. *Id.*[2]

---

[1] RDAP stands for the Residential Drug Abuse Treatment Program. *See, e.g.*, 18 U.S.C. § 3621(e); *Tapia*, 564 U.S. at 321–22.

[2] Galvan Escobar arguably invited the alleged error he now challenges, as he first raised and emphasized his mental health and drug abuse history in the sentencing hearing. But neither party flagged this issue. We are wary of tilting at windmills, so we take the

No. 16-51069

Under the plain error standard, "when there was (1) an error below, that was (2) clear and obvious, and that (3) affected the defendant's substantial rights, a court of appeals has the *discretion* to correct it but no obligation to do so." *United States v. Scott*, 821 F.3d 562, 570 (5th Cir. 2016) (alterations and quotation marks omitted). To determine if an error is "clear and obvious," we "look to the state of the law at the time of appeal" and "decide whether controlling circuit or Supreme Court precedent has reached the issue in question, or whether the legal question would be subject to reasonable dispute." *Id.* at 570–71 (quotation marks omitted). In the sentencing context, a defendant shows an error affected substantial rights if "the error increased the term of a sentence, such that there is a reasonable probability of a lower sentence on remand." *United States v. Escalante-Reyes*, 689 F.3d 415, 424 (5th Cir. 2012) (en banc) (quotation marks omitted). If the first three prongs are satisfied, we remedy the error "*only* if it seriously affected the fairness, integrity or public reputation of the judicial proceedings." *Scott*, 821 F.3d at 571 (quotation marks omitted).

## III.

Galvan Escobar posits that the district court violated 18 U.S.C. § 3582(a)[3] and *Tapia v. United States*, which prohibit a sentencing court from "impos[ing] or lengthen[ing] a prison sentence to enable an offender to

---

cautious approach and review for plain error. *See United States v. Fernandez-Cusco*, 447 F.3d 382, 384 (5th Cir. 2006).

[3] As relevant here, § 3582(a) reads:

The court, in determining whether to impose a term of imprisonment, and, if a term of imprisonment is to be imposed, in determining the length of the term, shall consider the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable, recognizing that imprisonment is not an appropriate means of promoting correction and rehabilitation.

18 U.S.C. § 3582(a).

complete a treatment program or otherwise to promote rehabilitation." 564 U.S. at 335. We disagree.

Our caselaw applying § 3582(a) and *Tapia* holds that "a sentencing court errs if a defendant's rehabilitative needs are a dominant factor that informs the district court's sentencing decision." *United States v. Pillault*, 783 F.3d 282, 290 (5th Cir. 2015) (alterations and quotation marks omitted). If Galvan Escobar's rehabilitative needs were indeed a dominant factor in the district court's decision, then he is entitled to resentencing; if not, then not. Of course, a sentencing court does not defy *Tapia* if the defendant's need for rehabilitation is merely a "secondary concern" or an "additional justification" for imposing or lengthening a sentence. *Id.* (quotation marks omitted). And "[a] court commits no error by discussing the opportunities for rehabilitation within prison or the benefits of specific treatment or training programs." *Tapia*, 564 U.S. at 334. So, too, may a court "urge the BOP to place an offender in a prison treatment program." *Id.*

The district court did not err, let alone plainly err. The court neither "impose[d]" nor "lengthen[ed]" Galvan Escobar's sentence to "enable" or "promote" his rehabilitation. *See id.* at 335. Quite the opposite: the district court *abbreviated* the sentence based on Galvan Escobar's history and characteristics. *See* 18 U.S.C. § 3553(a)(1). The court even acknowledged the prison term might be too short for treatment. Galvan Escobar's need for rehabilitation, then, could not have been a "dominant factor" informing the sentencing decision. *Pillault*, 783 F.3d at 290.

Indeed, Galvan Escobar raised his mental health and drug abuse issues—as well as his childhood in the United States—as grounds for imposing less time. That argument worked. After the government stressed that Galvan Escobar's criminal history warranted a Guidelines sentence, the district court remarked that its "prehearing feel" for the proper prison term was "a little

more than [Galvan Escobar] deserves." So the court varied downward, balancing Galvan Escobar's criminal history with defense counsel's "persuasive" arguments that Galvan Escobar's other history and characteristics justified a downward variance. The district court treated Galvan Escobar's mental health and drug abuse history not as reasons to imprison, but as keys to a quicker release. *Cf. Tapia*, 564 U.S. at 334 (finding error where the sentencing court "may have selected the length of the sentence *to ensure* that [the defendant] could complete the [RDAP] program" (emphasis added)).

Nor did the district court's subsequent Statement of Reasons offend *Tapia*. True, the district court specified that the sentence was "pursuant to the defendant's past mental health issues, because defendant resided in the United States from the age of 4 years to 18 years, and for the reasons stated on the record." But again, those reasons justified the court's choice to accept Galvan Escobar's argument for leniency, not to enable or promote rehabilitation.

Galvan Escobar is also incorrect to assert that the government's argument at sentencing—that he "need[s] time to go through a treatment program"—reveals a *Tapia* error. Though the government probably should not have waded into those waters, Galvan Escobar's rehabilitative needs were but a "secondary concern" to the district court. *Pillault*, 783 F.3d at 290. In fact, when defense counsel warned the court that Galvan Escobar might not get rehabilitative treatment in prison, the court recognized 36 months could be too few to participate in a rehab program. But instead of imposing more time for rehab, the district court appropriately stated it "hope[d]" Galvan Escobar could get help in prison and therefore requested the BOP provide it. Those comments do not flout *Tapia*; the *Tapia* opinion itself confirmed that "a court may urge the BOP to place an offender in a prison treatment program." 564 U.S. at 334. And we have declined to find *Tapia* error where, as here, "the district court

merely advises the defendant of rehabilitative opportunities or expresses its hope that the defendant will take advantage of such rehabilitative programming while imprisoned." *United States v. Wooley*, 740 F.3d 359, 365 (5th Cir. 2014). The trial court's statements dispel any notion that it staked the sentence on enabling or promoting rehabilitation.

Thus, this case differs from the three decisions on which Galvan Escobar relies. In those cases, trial courts imposed above-Guidelines sentences and explicitly mentioned the defendants' rehabilitative or treatment needs as important to the sentencing decisions. *See Wooley,* 740 F.3d at 360, 369–70 (three- to nine-months Guidelines range; thirty-month sentence based in part on getting the defendant help for a cocaine problem); *Culbertson*, 712 F.3d at 237–38, 244–45 (five- to eleven-months Guidelines range; thirty-month sentence based in part on giving the defendant "a period of time where [he] can, once again, get clean and sober and stay clean and sober"); *United States v. Broussard*, 669 F.3d 537, 543, 552 (5th Cir. 2012) (120-month Guidelines recommendation; 480-month sentence based in part on a "compelling . . . need to incarcerate th[e defendant] for the treatment he needs"). Neither condition applies here.

To be sure, the district court's downward variance from the Guidelines is not dispositive. In *Escalante-Reyes*, we found plain error under *Tapia* where the district court "gave a slightly-below Guidelines sentence." 689 F.3d at 425. But that case, too, is factually inapposite. There, "the circumstances show[ed] a probability that the court's mercy was . . . 'tempered' by the desire to have [the defendant] receive anger management training." *Id*. Here, the circumstances show the district court's mercy was spurred (not tempered) by Galvan Escobar's childhood and mental health and drug abuse history (not a desire to get him treatment).

8

In any event, Galvan Escobar failed to meet the third plain-error prong—an error affecting his "substantial rights"—as we see no "reasonable probability of a lower sentence on remand." *Id.* at 419, 424. This is because the district court tipped its hand: before Galvan Escobar's arguments at sentencing, the court thought a 40-month prison term proper. After arguments, the court imposed 36 months. The difference stems in large measure from Galvan Escobar's "persuasive" arguments.

## IV.

The district court did not violate *Tapia*. We therefore AFFIRM.